## BURNS *v.* ROSENSTEIN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MASSACHUSETTS.

No. 207. Argued March 18, 1890.—Decided March 31, 1890.

The plaintiffs filed a bill in equity to dissolve a copartnership with the defendants on the ground of violation of the contract of partnership and mismanagement, and to wind up its affairs in equity, and commenced the proceedings by attaching the defendants' property. A receiver was appointed by consent, and defendants answered, assenting to the dissolu-

tion on the ground of violations of the contract by the plaintiffs. It was referred to a master to hear and report on the issues of fact, to take an account of the dealings between the parties, and of all claims for damages arising out of the transactions, and to report. A copy of the report was furnished both parties before filing. The defendants took no exceptions. The report found that no misconduct or negligence was established on either side, and that the dealings between the parties resulted in a balance due the plaintiffs. A decree was entered accordingly. In taxing the costs, the plaintiffs were allowed their proportionate part of the costs of preserving the personal property attached; *Held*,

(1) That the defendants' assent to the dissolution of the partnership, and the winding up of its affairs in chancery, made it unnecessary to make proof of the special grounds for dissolution set forth in the bill, or for the court to decree a dissolution;

(2) That it was not open to the defendants to object for the first time in this court to the report of the master that it proceeded upon erroneous views of the contract of partnership;

(3) That there was nothing in this case to take it out of the operation of the rule that this court will not ordinarily review a decree for costs, merely, in equity.

IN EQUITY. The case as stated by the court was as follows:

Rosenstein Bros. (composed of the appellees Julius W. Rosenstein and Leo Rosenstein) and Henry Sellman, of New York, and J. J. Burns & Co., (composed of Joseph J. Burns and Robert Tarr,) formed a partnership in the business of canning fish, more particularly mackerel, and manufacturing pomace, or fish guano, to be conducted under the name of the Union Fish Company, on premises owned and occupied by' Burns & Co.. at Gloucester, Massachusetts. It was provided, among other things, in the written agreement of partnership, that Rosenstein Bros. should furnish the capital to carry on the business, also all material at cost, and sell all the goods manufactured at the best obtainable prices; that Burns & Co., should have charge of and superintend the factory, and devote all necessary time to the business at Gloucester; that interest on the capital invested by Rosenstein Bros. should be computed at the rate of six per cent per annum; that Rosenstein Bros. and Henry Sellman, jointly, should be entitled to five-eighths and J. J. Burns & Co. to three-eighths, of the net profits of the business, Art. 21; that "all losses, if any,

sustained by reason of bad debts shall be charged to profit and loss account, and are to be borne by the parties jointly; in the ratio of their stipulated interest," Art. 22; that Burns & Co. might take from the business fifty dollars per week for individual use and account, and draw on Rosenstein Bros. for funds required in the business in sums of not over fifteen hundred dollars in any one draft; and that the contract of partnership should remain in force for the term of five years, commencing May 1, 1881, and ending April 30, 1886.

The present suit was commenced November 7, 1881, in the Supreme Judicial Court for the county of Essex, Massachusetts. An attachment was sued out against the property of Burns & Co., and levied upon all their right, title and interest in certain personal property, consisting of fish product, and in two schooners, and also upon a steam engine and other property in the buildings occupied by the Union Fish Company.

An amended bill of complaint was filed showing that the object of the suit was to obtain a decree for the dissolution of the partnership, and a settlement of its affairs under the direction of the court. The dissolution was asked mainly upon the ground that the defendants had violated the terms of partnership, and were improperly managing the business committed to their charge. The plaintiffs asked the appointment of a receiver to take charge of the goods and assets of the partnership, as well as an injunction restraining the defendants from disposing of its property or from collecting the proceeds of any that had been sold.

By agreement of the parties an order was entered appointing a receiver of all the personal property of the partnership, with power to put the same in proper condition and sell it for the best interests of all concerned, and to collect the amounts due from the trustees or garnishees named in the writ of attachment, depositing all amounts received in the registry of the court subject to its orders.

The defendants demurred to the bill on the ground of multifariousness, for want of equity, and because it contained cause of action in respect to which there was a full and complete remedy at law. The suit was removed into the Circuit

Court of the United States upon the petition and bond of the defendants. In that court the demurrer to the bill was over-ruled, Judge Nelson saying: " The bill states a plain case for equitable relief. A partner is under no obligation to continue a member of a partnership when his copartner persistently and wilfully violates the essential conditions upon which the contract of the partnership rests. He is not under the necessity of remaining in the firm and resorting to his action at law upon the partnership contract for redress. He is at liberty to withdraw himself and his capital from the concern whenever it becomes reasonably certain that the business can no longer be carried on at a profit, whether through the misconduct of his copartner or from a failure of the business itself; so, if he has been induced to enter into the partnership contract through the deceit of his copartner, he may withdraw whenever the fraud practiced upon him becomes known. In neither case is he required to continue in the firm until the partnership expires by limitation of time, but is at liberty at once to ask for a dissolution and a winding up of the affairs of the partnership. The bill is not multifarious. It has a simple purpose — the dissolution and winding up of the concern. Though several grounds for relief are stated, yet they arise out of the same series of transactions, relate to the same subject-matter, and can be conveniently settled in one suit. They are all properly joined in one bill."

The defendants thereafter filed an answer controverting all the material allegations of the petition, particularly those charging them with dereliction of duty in the conduct of the business. But they averred " that said plaintiffs without cause published a notice that they would no further carry on the business under said contract, and that they by public notice dissolved, violated, and put an end, so far as they could, to the same; and the defendants are entirely willing and desirous that all business connections between them and the plaintiffs should be dissolved and forever ended, because of the dishonest, fraudulent and unjust conduct and violations of said contract by the plaintiffs."

On the 21st of April, 1883, the court below made the follow-

ing order : " On reading the pleadings in the above-entitled cause and hearing the counsel of the respective parties, and on consideration thereof, it is ordered that it be referred to George P. Sanger, Esq., as a master of this court, to hear the parties and their evidence and report as to all issues of fact made by the pleadings in said cause, and to take an account of the dealings and transactions between said parties and all claims for damages arising out of said transactions."

The special master on the 16th of October, 1885, made his report, from which it appears that when, in the course of the hearing before him, an examination of the books was reached, it was agreed by the parties that the book-keeper of the plaintiffs, and an expert book-keeper and accountant who had examined the books on both sides for the defendants, should together go over the books of both plaintiffs and defendants and draw from them a statement of the condition of the Union Fish Company at the time the suit was brought, showing the indebtedness or otherwise of the parties to that company, giving the undisputed and disputed items of account in separate columns. Statements of that character were prepared and furnished to the special master who made them a part of his report. After the testimony before him was concluded, but before arguments were heard, each party, at his request, presented a statement of the damages sustained by the alleged misconduct of the other party.

A copy of the master's report was furnished the parties before it was filed. He received no communication from the defendants or their counsel, but from the plaintiffs he received a statement of the objections upon their part to his draft of report. These objections were considered and overruled by him, and the report was filed October 16, 1885. On the 7th of December, 1885, no exceptions to it having been filed, it was confirmed under equity rule 83. And on the 6th of May, 1886, when the cause came on for further hearing, and after argument by counsel, it was adjudged by the court that the plaintiffs be paid the amount to the credit of the cause in the registry of the court, namely, $3733.40, and the further sum of $1679.14, with interest thereon from the date of the writ,

that is, $2131.94, and the costs of this suit to be taxed, with interest thereon from the date of the decree. It is suggested that the above result was reached in this wise: According to the report of the master the total liabilities of the Union Fish Company were $18,168.09 — to Burns & Co., $3733.87, and to Rosenstein Bros., $14,434.22. From this sum of $18,168.09 deduct the assets, that is, the money in court, $3733.40, and the balance of such liabilities was $14,434.69, which was the net loss of the partnership. Charge three-eighths of this net loss to Burns & Co., and deduct from such amount the liabilities of the company to them, there remained the sum of $1679.14.

From the above decree the defendants prayed and were allowed an appeal to this court.

Mr. *Eugene J. Hadley* and Mr. *Benjamin F. Butler* for appellants.

Mr. *William F. Slocum* for appellees

MR. JUSTICE HARLAN delivered the opinion of the court.

The special master reported that there was no sufficient evidence to establish misconduct or negligence upon the part either of the plaintiffs or of the defendants. This report having been confirmed, it is assigned for error that the court below did not dismiss the bill; and, that if a case was made for the dissolution of the partnership, it was error to proceed in the distribution of the assets without decreeing such dissolution. The consent of the defendants to a dissolution of the partnership, as shown by their answer, made it unnecessary for the plaintiffs to make proof of the special grounds set out in their bill for such dissolution, and authorized the court to proceed in the settlement of the accounts of the partners, and the distribution of the assets. And the fact that there was no formal decree of dissolution is immaterial in view of the pleadings, and the assent of the parties to a decree winding up the affairs of the partnership, and distributing its property.

It is also assigned for error that the court below erred in

acting upon the master's interpretation of certain articles of the partnership contract as a valid part of his report; in construing the partnership contract as requiring losses of capital to be borne by the partners in the same proportion in which the contract provided for the distribution of net profits; in decreeing that any part of the capital put in by the appellees and not paid back by the assets should be paid by the appellants, and that the appellants should be paid back neither from the assets nor by the appellees for any part of the capital put in by them; and in not decreeing priority of payment, in respect of advances found by the master to have been made by J. J. Burns & Co., to the Union Fish Company, next after payment of the debts and liabilities due from that company to outside creditors.

These questions are not open to appellants in this court. The decree below followed the report of the special master. And that report was based, in part, upon statements drawn from the books of the parties by the accountants selected by them respectively. Those statements contained the undisputed and disputed items in separate columns. The defendants did not file with the master or in court any exceptions to the report. If the statements by the accountants, or the report of the special master, were based upon any particular interpretation of the articles of partnership that was prejudicial to the defendants, it was their right to file exceptions to the report. The master was directed to report all issues of fact made by the pleadings, and to take an account of the dealings and transactions between the parties, and all claims for damages arising out of said transactions. He could not intelligently discharge that duty without adopting some theory as to the scope and effect of the partnership agreement. If he went beyond the order of reference, or if the account taken by him involved a misconception of the provisions of that agreement, the defendants should have brought those matters to the attention of the court by exceptions to the report. Having failed to do this, they cannot, in this court, for the first time, object that the master proceeded upon erroneous views as to the contract between the parties. Equity Rule 83; *Brockett* v.

*Brockett,* 3 How. 692; *McMicken* v. *Perrin,* 18 How. 504, 506; *Story* v. *Livingston,* 13 Pet. 359, 366; *Medsker* v. *Bonebrake,* 108 U. S. 66, 71.

After the decree below there was a report by the clerk as to the taxation of costs. The parties having been heard in respect thereto, an order was made allowing costs to the plaintiffs to the amount of $973.34. The report shows that the plaintiffs claimed a certain amount for expenses connected with the preservation and keeping of the personal property (not including the vessels) attached on the writ. The court disallowed five-eighths of that sum. The only objection urged in this court to the taxation of costs was the allowance of any sum whatever to plaintiffs for the preservation of the attached property. This objection cannot be sustained. It was said in *Trustees* v. *Greenough,* 105 U. S. 527, that "ordinarily a decree will not be reviewed in this court for costs merely in a suit in equity, although the court has entire control of costs as well as the merits where it has possession of the case on appeal from final decree." There is nothing in the record to take the present case out of the general rule. The allegations of the original bill justified the issuing of the attachment. It was right that the property taken under it should be cared for, and as the court found that the plaintiffs were entitled to a decree against the defendants, a judgment for costs properly followed; and we perceive no reason why the plaintiffs should not have been allowed, as part of their costs, a reasonable amount for the expenses incurred in preserving the attached property, and for which they became primarily liable to the officer keeping it. We cannot say, upon the record before us, that the court below exceeded its discretion in apportioning the expenses thus incurred.

*Decree affirmed.*