## CUYLER et al. v. ATLANTIC & N. C. R. CO.

(Circuit Court, E. D. North Carolina. September 29, 1904.)

**1. COUNSEL FEES—POWER OF COURT TO ALLOW—DISCRETION.**

A federal court of equity has power to make an allowance for counsel fees to a complainant who, as a joint owner of a fund or property, has maintained a suit for its preservation or protection, where it has been brought within the custody or control of the court, such allowance to be charged thereon; but the power is discretionary, and will only be exercised where it is clear that a direct benefit has resulted to the property or those interested therein.

In Equity. On petition for allowance of counsel fees.

Argo & Shaffer, F. I. Osborne, Woodville Fleming, W. H. Day, W. W. Clark, and W. C. Maxwell, for complainants.

Pou & Fuller, T. J. Jarvis, T. B. Womack, C. M. Busbee, and W. C. Monroe, for defendant.

PURNELL, District Judge. The appeal having been withdrawn by consent under the rule, the only question left for decision is that of allowances as asked for in the petition filed at the hearing when a final decree as to all other matters was entered; this question alone being reserved. It is necessary, in determining this question, to review casually the record of this suit in equity. On May 2, 1904, complainant filed a bill in behalf of himself and all other stockholders of the Atlantic & North Carolina Railroad Company against the Atlantic & North Carolina Railroad Company, defendant. After setting out the jurisdictional allegations, the bill alleges that the complainant is owner of 37 shares of stock of the defendant corporation, and in detail the charter and organization, and mismanagement and acts ultra vires, and the financial condition thereof, quoting largely from annual reports; that a large majority of the stockholders, other than the state of North Carolina, were almost unanimous in their desire that some favorable form of lease should be accepted, which was prevented by the withdrawal of the state's proxy, thus defeating a quorum. The bill then prays for an injunction and receivership and mandamus, and that the orator therein may have such further relief in the premises as the nature of the case may require, and praying for a subpoena in equity, which was duly issued. Upon the filing of this bill a notice to show cause was duly issued, and executed by the marshal. An answer was duly filed, denying most of the material allegations of the bill; and also a petition by Florence P. Tucker, asking to be made a party, which petition was duly granted; and numerous affidavits setting forth the advantages of a lease and other matters. On the return day an order was entered allowing K. S. Finch to intervene, and his bill of complaint filed on the same date. On the application of Florence P. Tucker for a continuance of 60 days in order that a favorable lease might be effected and the litigation brought to a speedy termination, the court construed orally the injunction as not preventing a meeting of the directors and stockholders to make a lease, and declaring that the court had no power to make a lease, but, if such lease were made, would consider the same for a basis of motion to discharge the receivers, and afterwards this construction of the injunction was incorporated in a written order duly entered. It appears of record that subsequent to this there was a meeting of the stockholders and directors of defendant corporation, at which a lease of the road was perfected, and a final decree, dismissing the bill as to all matters except as to the question of allowance, was duly entered. The petition of the solicitors is as follows:

"The undersigned complainants, attorneys and solicitors in the above cause, petition the court that an allowance reasonable and equitable be made to them and to the complainants for counsel fees for services and expenses in the said case, to be paid out of the funds and property of the defendant company."

The argument presented to the court that the matter of allowances in a court of equity, such as that asked for in the petition, are regulated by Rev. St. 823 and 824 [U. S. Comp. St. 1901, p. 632], is without force, for the right to make such allowances is recognized since the case In re Waite, 1 Lowe, 321, Fed. Cas. No. 7,170, to the case of Randolph v. Scruggs, 190 U. S. 533, 23 Sup. Ct. 710, 47 L. Ed. 1165, decided as late as the October term, 1902, of the Supreme Court of the United States. The rule for such allowances is laid down in Trustees v. Greenough (1881) 105 U. S. 527, 26 L. Ed. 1157, and Central R. R. v. Pettus, 113 U. S. 122, 5 Sup. Ct. 387, 28 L. Ed. 915. The Pettus Case was decided after the act referred to, as were many other cases citing and affirming the principle therein annunciated; as in Burns v. Rosenstein, 135 U. S. 456, 10 Sup. Ct. 817, 34 L. Ed. 193; Harrison v. Perea, 168 U. S. 326, 18 Sup. Ct. 129, 42 L. Ed. 478; Fowler v. Equitable Trust Company, 141 U. S. 411, 12 Sup. Ct. 8, 35 L. Ed. 794; Dodge v. Tulleys, 144 U. S. 457, 12 Sup. Ct. 728, 36 L. Ed. 501; Meddaugh v. Wilson, 151 U. S. 351, 14 Sup. Ct. 356, 38 L. Ed. 183. The distinction drawn between these cases is that in most of them there was a fund in court. In the Pettus Case and the Wilson Case, and possibly some others, the property was in the hands of the court, and administered under its direction. The Pettus Case, which has been frequently cited with approval, decided after the passage of the act of Congress, seems to be authority under which the court must act in the case at bar, together with the Greenough Case, which lays down the original rule; the distinction being in one case the fund was being administered by the court, in the other the property was in the hands of the court or its officers. The following is the rule as laid down in the Greenough Case:

"One jointly interested with others in a common fund, who, in good faith maintains the necessary litigation to save it from waste and secure its proper application, is entitled in equity to the reimbursement of his costs as between solicitor and client, either out of the fund itself or by proportionate contributions from those who receive the benefit of the litigation."

This syllabus of the case is cited with approval in numerous decisions, both by the Supreme Court of the United States and by the Circuit Court of Appeals in several of the circuits, and seems to be the settled law on the subject. In that case the fund was in the custody of the court. In the case at bar there is no fund in the hands of the court, but there was a small fund at one time in the hands of the receiver, which was afterwards returned to the defendant corporation. The property was in the hands of the receiver for a short time, but was restored to defendants under the order of the Chief Justice. In all of the cases in which allowances have been made there has been a direct benefit to the property or those interested therein. The only evidence before the court of any benefits to the property or to any one is the affidavit of a broker that the stock has been enhanced in value by the making of a lease. The lease was the result of the action of the stockholders and directors of the corporation, though indirectly it may be, but not directly, the result of the suit. At least there is nothing before the court upon which to base this conclusion. The complainant has

been as much benefited by the enhancement of his stock, or the increased value thereof, as any other stockholder.

True, it is claimed, and with some show of propriety, that the corporation and its property have been wrested from the hands of wreckers, despoilers, or parties who were designedly using it for private purposes and acts ultra vires the charter; but the court does not feel justified in saying that the making of the property a paying property and the enhancement of the stock therein entitles the complainants to an allowance of 5 per cent. on the enhanced value, or anything like that claimed by counsel; the claim set up being $13,000 in one view, and $7,500 in another, while the value of complainant's stock at par is only $3,700. To allow either claim would be to make litigation more profitable from a speculative standpoint than any stock deal of which the court has knowledge. This as regards the original complaint of Cuyler.

K. S. Finch is a mere intervener, whose intervention has affected the suit neither one way or the other, as the court sees it, except possibly in obtaining the appointment of a co-receiver, and he is entitled to nothing. This being a matter of discretion, the petition of the solicitors is denied.