### WILLIAMS et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. October 30, 1918.)

#### No. 3179.

INTOXICATING LIQUORS  254—INTERSTATE SHIPMENTS—SUIT FOR FORFEITURE—COSTS.

    Where a claimant unsuccessfully defends a suit under Criminal Code, § 240 (Comp. St. 1916, § 10410), for forfeiture of liquors shipped without proper labels, the court may, where the facts justify it, adjudge the costs and expenses against him.

In Error to the District Court of the United States for the Southern District of Georgia; Emory Speer, Judge.

Suit by the United States against 530 Packages of Spirituous and Intoxicating Liquor; Wiley Williams and George Davis, claimants. Judgment for the United States, and claimants bring error. Affirmed.

This suit was commenced by a libel in rem for the seizure and forfeiture of some 530 packages of spirituous and intoxicating liquors, described as con-

tained in two certain freight cars located on the Ocilla, Pine Bloom & Valdosta Railroad at Mobley's Siding, in the county of Irwin, state of Georgia, as shipped by one Wiley Williams and one George Davis, in violation of the provisions of section 240 of the Criminal Code of the United States (Act March 4, 1909, c. 321, 35 Stat. 1137 [Comp. St. 1916, § 10410]).

The libel contains four counts, the first two of which charged that the shipment of said liquors in interstate commerce was from the city of Fitzgerald, in the state of Georgia, to the city of Jacksonville, in the state of Florida, and the third and fourth counts charged that the shipment was from Leilaton, in the county of Coffee, in the state of Georgia, to the city of Jacksonville, in the state of Florida.

Upon filing the libel a warrant of seizure was duly issued, and on the following day an order was issued for the removal of the said carloads of liquors from said Mobley's Siding to the city of Macon. Three days after said order of removal, said Wiley Williams and George Davis, the plaintiffs in error, intervened, claiming to be the owners of said property, and alleging that the property libeled was expensive to keep, and that pending the adjudication the delay would work damage and injury to the claimants, and thereupon prayed that the property should be delivered to the claimants, and that the court should appoint the proper persons to appraise said property, and thereupon that claimants should have the privilege of bonding the same. This intervening claim was followed by an amendment denying all the allegations of the libel with regard to the shipment of the property, and especially alleging as follows:

"Interveners further show to the court that on the 27th day of April, 1916, they delivered said two cars of intoxicating liquors to the Ocilla Southern Railroad Company, to be by it and its connecting carriers, transported, one car to Lax, Ga., and one car to Metz Siding, Ga., which shipments were entire intrastate. Thereafter some trouble, confusion, and excitement arose over the fact that said two cars of intoxicating liquors were located at said Lax and said Metz Siding, and various parties living in the vicinity of said rural stations evidenced a desire to take charge of the whole or a portion of said two cars of intoxicating liquors. Thereupon the Ocilla, Pine Bloom & Valdosta Railroad Company, on whose line said two cars were situated, moved said cars to Leilaton, Coffee county, Ga., in order that the same might be protected and preserved. After said two cars of intoxicating liquors had been moved to Leilaton, interveners conferred with Reason Henderson, the president of said Ocilla, Pine Bloom & Valdosta Railroad Company, and informed the said Reason Henderson that if they could legally do so it was their purpose and desire to reship said two cars of intoxicating liquors to the city of Jacksonville, Fla., at the same time advising the said Henderson that before said cars could be shipped to the state of Florida it would be necessary for them to prepare said packages of liquor for interstate shipment, and requested the said Reason Henderson to consult with the counsel for the railroad company, and ascertain from such counsel whether it was legal and lawful to ship two cars of liquors out of the state of Georgia into the state of Florida, provided that the laws with reference to interstate shipments of intoxicating liquors were complied with."

No proceedings to bond the property appear thereafter to have been taken.

The case was brought to trial before a jury, which rendered a general verdict for the United States. Thereupon the court entered a decree of forfeiture of the property and rendered judgment as follows:

"And it is further ordered and decreed that the said 530 packages of spirituous and intoxicating liquors be, and the same are hereby, condemned and forfeited to the United States of America, and that each and every package of said spirituous and intoxicating liquors be, by the marshal of this court, forthwith delivered to the Secretary of the Treasury of the United States, or his authorized agent, taking his receipt therefor. Said liquors to be disposed of as the said Secretary of the Treasury shall direct. And it is further ordered, adjudged, and decreed that the United States of America do have and recover from the said claimants, to wit, Wiley Williams and George Davis, all costs of court, including freight charges incurred in trans-

254 F.—4

porting said spirituous and intoxicating liquors from the point or points where seized by the marshal to Macon, Ga., and all expenses for guarding and storing said spirituous and intoxicating liquors while in the possession of the marshal, and all other costs and expenses of every kind and character, not hereinbefore paid by said claimants, incurred by this litigation between said claimants and the United States of America, with right of execution therefor, leave being now reserved to the United States of America to enter thereafter such supplemental judgment as may be necessary for proper fixing the exact amount of recovery; and, in case said costs and expenses, or any part thereof, are not paid by said claimants, and in the event the Secretary of the Treasury shall accept said liquors, such costs or expenses, or any unpaid part thereof, be and the same are hereby adjudged, decreed, and directed to be paid by the United States.

"This the 9th day of March, 1917."

On May 23, 1917, the following supplemental judgment was entered:

"The jury having returned a verdict in favor of the United States in the above case, and a judgment having been entered thereon on the 9th day of March, 1917, with the right reserved therein to take a supplemental judgment for all costs of court as soon as the exact amount of same could be determined, and the exact amount of said costs having been this day ascertained, it is therefore ordered, adjudged, and decreed that the United States do have and recover from the claimants in said cause, to wit, Wiley Williams and George Davis, in the sum of $1,867.53, costs of court, said amount being itemized as follows:

Clerk's costs:

| | |
|---|---:|
| Attorney's docket fee......................................... $ | 20.00 |
| Other costs (clerk's)......................................... | 44.90 |
| Marshal's costs: | |
| Guard hire from June 16 to 26, 1916, inclusive, day guard, at $2.50 per day............................................. | 27.50 |
| Guard hire from June 16, 1916, to March 22, 1917, night guard, at $2.50 per night, 280 nights at $2.50..................... | 700.00 |
| Rent of storage room from June 17, 1916, to March 22, 1917, at $1 per day (279)......................................... | 279.00 |
| Freight on two carloads liquor from Mobley's Siding, Berrien county, to Macon, Ga., upon order of court................ | 569.68 |
| Fees of marshal serving orders, and expenses of travel to serve same, and expenses of deputies guarding said liquor in transit | 57.30 |
| Hack fares from marshal's office to place of storage, from June 17, 1916, to March 22, 1917................................ | 4.75 |
| Two heavy locks, at $1.25 each............................. | 2.50 |
| Carpenter putting locks on, staples, etc................... | 1.50 |
| Other costs: | |
| Witness' fees.............................................. | 160.40 |
| Total ........................................... | $1,867.53 |

Thereupon said Wiley Williams and George Davis sued out this writ of error, assigning errors as follows:

"(1) Because the court erred in the judgment of March 9, 1917, in condemning the claimants to pay the costs in said action.

"(2) Because the court erred in said judgment of March 9, 1917, in condemning the claimants to pay the costs of seizing, guarding, removing, and storing the liquors therein mentioned, for the reason that in and by said judgment the court decreed the liquors therein mentioned to have been forfeited to the United States as of the date of the original seizure, and all expenses incident to the same accruing subsequent to that date should have been adjudged to have been paid by the United States.

"(3) Because the court erred in said judgment of March 9, 1917, in condemning the claimants to pay the expenses incident to the seizure, removing, storing, and guarding said liquors subsequent to the seizure thereof, for the reason that the court should have adjudged that said liquor be sold and said costs and expenses paid out of the fund realized from said sale.

"(4) Because the court erred in said judgment of May 5, 1917, in condemning the claimants to pay costs of court, amounting to $1,867.53.

"(5) Because the court erred in said judgment of May 5, 1917, in condemning the claimants to pay the items included in said judgment under the head of 'Marshal's Costs,' for the reason, said property having been adjudged to be forfeited to the United States as of the date of the original seizure, the United States should have been condemned to have paid the expenses incident to preserving and keeping said property subsequent to said date, and for the further reason that the court should have, in and by said judgment, directed that the liquors therein mentioned should be sold, and the costs and expenses incident to preserving and keeping the same paid out of the fund realized from said sale."

Alexander Akerman and Charles Akerman, both of Macon, Ga., for plaintiffs in error.

E. M. Donalson, U. S. Atty., of Macon, Ga.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts as above). Whether the court erred in adjudging costs and expenses attendant upon the seizure in this case against the intervening claimants depends upon the facts in the case, as shown by the transcript before us, and as this shows no bill of exceptions, nor any agreed statement of facts, and as the verdict of the jury was against the interveners and in favor of the United States on all the issues involved, it follows that the only facts we can consider are those shown by the pleadings. Looking to the pleadings, we find that the plaintiffs in error were the original violators of the law, rendering the seizure proper and necessary, and through their intervention the proceedings were delayed nearly 10 months, thereby largely increasing all the costs and expenses incurred for the preservation of the property pending the final judgment of the court, and we conclude that the plaintiffs in error were properly held responsible for all the costs and expenses incurred from the beginning of the suit. See Clara O. Burns, Adm'x, et al. v. Julius W. Rosenstein et al., 135 U. S. 449, 10 Sup. Ct. 817, 34 L. Ed. 193.

This view of the case is decidedly strengthened by the admission of the interveners in the amendment to their claim to the effect that they originally shipped the liquors for distribution in the state of Georgia as an intrastate shipment, which would have been in violation of the laws of the state of Georgia, wherein said liquors were contraband and liable to seizure and forfeiture See Laws Ga. 1915 (Extra Sess.) p. 88. Taking this view of the case, none of the errors assigned is well taken.

The judgment of the District Court should be affirmed; and it is so ordered.