432

SKINNER et al. v. CROMWELL.

Nos. 662, 674.

Circuit Court of Appeals, Tenth Circuit.
Jan. 4, 1933.

A. A. Davidson, of Tulsa, Okl. (P. J. Carey, of Oklahoma City, Okl., and West, Gibson, Sherman, Davidson & Hull, of Tulsa, Okl., on the brief), for appellant Cromwell.

Robert Stone, of Topeka, Kan., and Emmet H. Gamble, of Kansas City, Mo. (Joseph C. Stone, of Muskogee, Okl., on the brief), for appellees Skinner and Fellows.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

This suit is bottomed on a breach of trust by Cromwell and E. L. Graves. Graves departed the jurisdiction and could not be served. The bill was then dismissed against Cromwell, and the plaintiffs below brought it here on appeal. We held that Cromwell and Graves were co-trustees and jointly implicated in a breach of the trust, which rendered each liable for the acts of both; and reversed the action of the District Court in dismissing the bill against Cromwell. Skinner et al. v. Cromwell et al. (C. C. A.) 40 F.(2d) 241, 246. In our opinion we set forth the facts that constituted the trust. The trust property consisted entirely of oil leases on lands in Oklahoma and Louisiana. The acreage in each state is stated in the "Subscription Memorandum" in our opinion on that appeal. The leases stood in the names of Cromwell and Graves, but it will be observed from the memorandum that they had associates who owned interests in them. They proposed to form a syndicate to which these leases were to be and were assigned, and then issue subscription certificates against the leases so pooled to the extent of three-fourths of their estimated value of $62,500.00 to those who would purchase the same at $100.00 each certificate. The declaration of trust, however, was to include as beneficiaries not only purchasers of certificates, but also Cromwell, Graves and their associate owners who were to retain one-fourth interest in the leases. That memorandum says that subscribers for certificates are "to be included in a declaration of trust combining the interest of all purchasers and present owners." We also summarized the declaration of trust. The syndicate was formed at Kansas City in the summer of 1920, and a number of subscriptions for certificates were taken at that time, and while a number of certificates were thereafter issued and sold, those sold never amounted to three-fourths of the total number, so that Cromwell, Graves, and their associate owners retained more than one-fourth of the certificates. So far as the record shows, their associate owners were not known to subscribers until long after the syndicate and trust were formed. H. G. Warne was named in the declaration of trust with Cromwell and Graves, as trustees, but he was never active as such. Cromwell and Graves took sole charge of the trust estate.

They later disposed of the Sam Little oil lease on 120 acres in Oklahoma for their sole use and benefit without knowledge at the time on the part of any certificate purchaser. It

was a part of the trust estate. Certificate-holders brought this suit to compel Cromwell and Graves to account therefor. We held Cromwell should account. In that opinion, we said:

"The decree dismissing the bills, except as to defendants oil companies, will be reversed and the cause remanded to the district court to take that accounting as to the Sam Little lease, and to ascertain the shareholders in the Oklahoma-Louisiana Syndicate for the purpose of making distribution among them. The only credits to be allowed in favor of Cromwell against the full amount for which the Sam Little lease was sold, or its reasonable value, are the rentals paid on syndicate leases by Cromwell and Graves. Any unpaid stock subscriptions will be credited to Cromwell and Graves. Costs of this appeal will be adjudged against Cromwell. The dismissal of the bill against the three corporate defendants is affirmed. As to all other parties it is reversed and remanded."

When the case went back to the District Court, that court entered an order that Cromwell account to the shareholders of the Oklahoma-Louisiana Syndicate for the Sam Little lease and appointed a master of its own motion to hear the evidence with respect to the accounting, the identity of the certificateholders, and the number of shares to which each is entitled, for the purpose of making distribution among them; that he make findings of fact and conclusions of law from the proof, and report the evidence taken and his findings to the court. Power was reserved in the court to review the master's findings and recommendations and the evidence taken, and to make other or further findings as shall appear to the court to be appropriate. Cromwell excepted to the master's report and his findings, recommendations and conclusions therein, which being overruled he has again appealed. The errors that he has assigned and specified in that respect will now be considered.

Cromwell in compliance with Equity Rule 63 (28 USCA § 723) brought in his accounts in the form of debits and credits. As a debit he charged himself with $50,000.00, the highest market value of the Sam Little lease, and as a credit $4,780.00, paid as rentals and royalties on syndicate leases and premiums on bonds. He gave a list of the certificateholders and the number of shares of each, which is in accord with the findings of the master, except he credited H. B. Keim with fifty shares whereas the master found that those shares belonged to Mrs. L. G. Fellows. He credited himself with 232 shares and Graves with 39.20 shares. All of the other shares were in the hands of other parties, the total number of shares being 625.

One of the exceptions specified and argued here relates to the Keim-Fellows fifty shares. Cromwell claims that in the accounting they should be credited to Keim, that Keim paid for only twenty-five shares, and that he should be charged $2,500.00 for the other twenty-five shares. Mrs. Fellows bought the whole fifty shares from Keim and received the certificates, paying him therefor $5,000.00. Keim was a sales agent of Cromwell and Graves to sell shares, and it is conceded that he earned the first twenty-five shares for services so rendered as sales agent, but it is denied that he earned the second twenty-five shares. The evidence on that point involves a second employment of Keim. Cromwell drew a written contract. It required Keim to sell at least $12,500.00 in certificates within a specified time. He refused to sign it. Correspondence ensued between Cromwell and Graves (sometimes one and sometimes the other) and witness Lundeen, who conferred with Keim by letter and in person. Finally certificates for the twenty-five shares were delivered to Keim at the direction of Graves, and he was advised to go on with the sales, Graves saying in a letter which he wrote in answer to a letter to Cromwell from Lundeen on the subject that they would help him in selling the $12,500.00. This letter was dated December 28, 1920. Thereafter, Keim up to July 20, 1921, went on with sales and had disposed of $8,500.00 in certificates. On that day sale of further shares was stopped at a meeting held in Kansas City attended by Cromwell, Graves, and others who were interested. The syndicate had at that time lost all its leases except on 840 acres in Oklahoma, and it was not believed that further sales should be made. The exception is without merit.

On another exception it is contended that Alburn E. Skinner and five other certificateholders whose total shares are 100.80 were not actual subscribers and purchasers of an interest in the syndicate; that Graves by an agreement to which Cromwell was not a party was trustee for the interest in the syndicate which those shares represented, and that he should be made to account to them for what he got out of the Sam Little lease before Cromwell should be held accountable to said six certificateholders. It may be conceded that said six certificateholders did not subscribe for and as such pay for their shares.

In explanation of how they acquired their 100.80 shares attention is again called to the subscription memorandum copied in our opinion on the first appeal [40 F.(2d) 241, 242] wherein it is recited that Graves and Cromwell and "associates" are the owners of the leases, and wherein it is further recited that the interest of subscribers and purchasers are "to be included in a declaration of trust combining the interests of all purchasers and present owners." Graves testified that he and Cromwell held title to the leases; that the Mercantile Credit Company was associated with him in the ownership of a half interest in the leases prior to the formation of the syndicate although no assignment had been made to it, but he held the legal title for it. Cromwell was treasurer of the syndicate. It appears in evidence that at one time the interest of Cromwell and Graves in the syndicate was 280 shares, that is, 140 each. Lundeen testified that the unsold stock was divided (time not stated) one-half to Graves for the Mercantile Credit Company and one-half to Cromwell. Graves was personally interested in the Mercantile Credit Company, and when Graves turned over to it its interest in the syndicate, it divided the shares among its stockholders as a dividend. It is a circumstance of evidentiary weight that the 100.80 shares received by said six certificateholders as dividends plus the 39.20 shares that the master found belonged to Graves, who was also interested in the Mercantile Credit Company, make up the 140 shares. But however that may be, those six certificateholders of 100.80 shares thus succeeded as beneficiaries to the rights of Cromwell's and Graves' "associates" and "owners" for whom the trust in part was created. There is no difference in right between them and those who subscribed and paid their money to Cromwell and Graves for shares. The latter do not contend that there is a difference, and we do not think it lies with Cromwell to insist that they shall seek other relief in order that his burden may be lightened, nor should they be forced to go out of the jurisdiction and seek in another forum restitution from Graves for Cromwell's accommodation. Let him look to Graves for contribution.

In December, 1923, Cromwell and Graves sold the lease so far as it covered eighty acres of the Sam Little 120 to Roxana Petroleum Company for $20,000.00. The following spring Graves sold his interest in the lease covering the remaining forty for $15,000.00, and Cromwell sold his interest in the forty for $30,000.00. He so stated in a letter to one Strauss in July, 1926, and does not deny the statement in his testimony.

The master found that the reasonable market value of the Sam Little lease in the summer of 1924 and before the suit was instituted was the sum of $100,000.00, and that Cromwell should account for that amount to the syndicate. This finding was excepted to, and is specified and argued here. Appellees introduced witnesses experienced in the development of new oil fields and as competent, we dare say, as could be found on the subject of the reasonable value of leases under the conditions stated to exist in the field where the Sam Little 120 acres was located, of which and the field's development they had personal knowledge, and most of them, if not all, testified that the reasonable value of this lease in the summer and fall of 1924 was in stated amounts in excess of $100,000.00. Appellant introduced witnesses of like character and qualification who placed the reasonable value at sums less than $100,000.00. Of course, we are not concluded by the master or the District Judge on fact or law, but it is the general rule that the findings of a master concurred in by a trial judge are presumptively correct, especially so as to a fact when the testimony on the point is in conflict. Callaghan v. Myers, 128 U. S. 617, 666, 9 S. Ct. 177, 32 L. Ed. 547; Houck v. Christy (C. C. A.) 152 F. 612; Miller v. United States (C. C. A.) 57 F.(2d) 987; Brown v. Lanyon Zinc Co. (C. C. A.) 179 F. 309.

It is assigned as error that the court allowed recovery of interest on the $100,000.00 reasonable value of the lease as found, from and after March 5, 1925, the day the suit was instituted; whereas no interest could be properly charged against Cromwell until judgment in the case. It is argued the suit was brought to recover unliquidated damages, that the state law on that subject controls, and that this court has accepted that to be the rule in Oklahoma, as claimed by appellant. Zurich General A. & L. Ins. Co. v. Mid-Continent Pet. Co. (C. C. A.) 43 F.(2d) 355. Granted, if the premise be sound. But for purpose now under consideration, should the whole of the $100,000.00 be taken as damages uncertain in amount until liquidated by the judgment? What about the $65,000.-00 that the two trustees received? When they received it they held it for the syndicate, and immediately on demand by the institution of this suit it was their duty to account for it to the beneficiaries, for the syndicate

owned nothing else of any value at that time. The Oklahoma statute cited in the Zurich Insurance Company Case authorized, we think, recovery of interest on $65,000.00 of the $100,000.00 judgment. The decree will be modified by the District Court by deducting the interest charged on the remaining $35,000.00 of the judgment.

In all other respects on this appeal the judgment is affirmed.

Plaintiffs below have also appealed, assigning as error only the failure of the master to find the reasonable value of the Sam Little lease to be $150,000.00. We discussed this subject on Cromwell's appeal, and it does not seem necessary that more be said. However, we do not find in either record that plaintiffs filed exceptions to the master's report, neither the one assigned as error nor others. Equity Rules 66 and 67 (28 USCA § 723) are specific. The earlier practice required the filing of objections with the master to his proposed report, giving him an opportunity to reconsider the matters objected to before final report, and thereafter counsel were at liberty to file exceptions to his final report. This was the mode of procedure to save the points on appeal. Daniell's Chancery Pleading and Practice (Perkins' Ed.) Vol. 2, Chap. XXVI, § 7, Master's Report. But the Equity Rules impliedly dispense with that requirement, and only require that exceptions to his final report be filed in the court within the time therein stated. Foster's Federal Practice (6th Ed.) Vol. 2, §§ 392, 393; Medsker v. Bonebrake, 108 U. S. 66, 71, 72, 2 S. Ct. 351, 27 L. Ed. 654; Burns v. Rosenstein, 135 U. S. 449, 455, 10 S. Ct. 817, 34 L. Ed. 193; Sheffield, etc., Ry. Co. v. Gordon, 151 U. S. 285, 290, 291, 14 S. Ct. 343, 38 L. Ed. 164; Sandford v. Embry (C. C. A.) 151 F. 977, 983.

On this appeal also the decree is affirmed.