PATTERSON DENTAL COMPANY
*v.* Barry and Patsie BRAZIL
d/b/a AMERICAN DENTURE CENTER

CA 84-309

688 S.W.2d 310

Court of Appeals of Arkansas
Division II
Opinion delivered April 24, 1985

*Rose Law Firm, A Professional Association,* by: *Richard T. Donovan,* for appellant.

*Ronald J. Bruno & Associates,* by: *Ron Bruno,* for appellee.

GEORGE K. CRACRAFT, Chief Judge. This case comes up for review on appeal and cross appeal. We find no merit in either and affirm the judgment of the trial court as entered.

It was undisputed that the parties first entered into an oral agreement under which Patterson Dental Company agreed to sell to Barry and Patsie Brazil dental equipment and supplies. Although it was not disputed that they agreed that Patterson would sell the supplies at a discount and would allow a discount on the equipment provided the Brazils could obtain financing from a party other than Patterson, the evidence was conflicting as to the amount of discount and what constituted outside financing. Brazil testified that he was to receive a 25% discount on the equipment. Officials from Patterson testified that the discount on the equipment was to be determined on an item by item basis and would range from 15% to 25%. There was no dispute that they had agreed the financing must be from someone other than Patterson.

Brazil initially arranged for financing through Credit Alliance Corporation. In order for that financing to be obtained Credit Alliance required that the equipment be installed. In accordance with that requirement Patterson installed the equipment before financing was available and before a written sales agreement was executed. When Credit Alliance learned of the discount it declined to finance the transaction. The parties subsequently executed an install-ment sales contract and a security instrument in favor of Patterson which made no mention of discount on either supplies or equipment and was unclear as to the responsi-bility for the payment of the sales tax. The parties disagreed as to the terms of their oral agreement on those issues. It was

not disputed that Patterson would allow the discount after the written installment contract and security instrument were executed provided the outside financing could be obtained.

The appellees subsequently obtained financing from Dental Capital Corporation. Patterson then refused to allow the discount because Dental Capital was its wholly owned subsidiary. It contended that this was not "outside financing" within the meaning of their agreement. Patterson decided that the appellees were in arrears on their account, initially placed them on C.O.D. status, and subsequently refused to deliver any more supplies to them on any basis. Patterson then brought suit alleging that the Brazils owed it $26,631.91 on account plus an additional sum of $4,703.52 as sales tax on the $157,000 equipment purchase. The Brazils denied the indebtedness, claimed that they were entitled to a discount in an amount in excess of that claimed by Patterson, and denied any liability for the sales tax, contending that under the agreement the tax was to have been paid by Patterson. By way of counterclaim the Brazils alleged that the failure of Patterson to continue to sell supplies to them at discount forced them to purchase supplies from other outlets at much higher prices, for which they prayed damages.

By agreement of the parties the matter was referred to a master. The master found that the contract provided for a discount if the purchase was financed by one other than Patterson. He further found that although Dental Capital was a subsidiary of Patterson it was an entirely separate and distinct entity and met the requirement of outside financing as a condition of the discount. He also found that although the contracts did not expressly so provide, the Brazils were obligated under their agreements to pay the sales tax. On the complaint he found that the sales tax and the open account owed to Patterson equalled the sum of $26,631.91 and recommended offsetting judgments accordingly.

The appellant filed an exception to the report insofar as it found that financing with Dental Capital met the requirement of outside financing. Appellant did not except

to any other finding. Brazil filed no exceptions. The court overruled the exception to the report, approved the master's findings and conclusions, and entered judgment in favor of Brazil in the sum of $1,368.09, that being the difference between the two judgment.

Patterson appeals contending the finding that Dental Capital constituted outside financing was clearly erroneous. The Brazils cross-appeal arguing the trial court erred in holding them liable for payment of sales tax and in disallowing their claim for damages. They also contend that the amount allowed as discount was erroneously computed.

On Patterson's direct appeal we cannot conclude that the finding of the trial court was clearly erroneous. Although it was not disputed that the agreements contained an understanding that the discount would be allowed if the Brazils obtained outside financing from some concern other than Patterson, Patterson argues that as Dental Capital was its subsidiary it was not outside financing and that they had so informed the Brazils in a letter of December 27.

The appellees, on the other hand, testified that in making the agreement the words "affiliates, partnerships or subsidiaries" were never mentioned. It was simply agreed that the financing must be from some source other than Patterson. Brazil testified that he knew that he had to get financing from someone other than Patterson but he was never told that Dental Capital was Patterson's subsidiary. Nor was he informed that if Dental Capital provided the financing he would lose his rebate until after all arrangements with Dental Capital had been completed. He testified that the understanding between the parties was that the discount would be allowed if financing were obtained from any entity other than Patterson and that the exclusion of any other financial institution was not within the contemplation of the parties.

On conflicting evidence the master found appellees' testimony to be correct. Under ARCP Rule 53(e)(2), the court shall accept a master's findings unless they are clearly erroneous. Under ARCP Rule 52(a) we review the findings

of a master to the extent that the court adopts them as if they were the findings of the court and will not set them aside unless they are clearly erroneous. We find that the master's findings and the action of the court in adopting them were not clearly erroneous.

We do not address any of the other points advanced in the direct appeal or cross-appeal because they were not raised in the trial court by exception to the master's report. If any of the findings of the master were deemed to be incorrect, they should have been pointed out to the trial court by a specific objection. ARCP Rule 53(e)(2) provides that the court shall accept the master's findings of fact unless they are clearly erroneous. It allows the filing of written exceptions to the report within twenty days of the filing of that report and a ruling by the court on those exceptions in which it may adopt the report or modify it, reject it in whole or in part, receive further evidence, or recommit it to the master with further instructions.

ARCP Rule 53 contains wording similar to that found in superseded Ark. Stat. Ann. §§ 27-1812 and 27-1814 (Repl. 1962). In *Dashko* v. *Oil Fields Corp.*, 174 Ark. 1067, 298 S.W. 351 (1927); *Wally* v. *Heck,* 125 Ark. 597, 185 S.W. 444 (1916); *Walworth* v. *Birch,* 81 Ark. 52, 98 S.W. 717 (1906) our court in applying those sections held that exceptions to the report of a master made for the first time on appeal will not be considered. In the early case of *Burns* v. *Rosenstein,* 135 U.S. 449 (1890) the U.S. Supreme Court, in construing similarly worded Federal Equity Rule 83, stated that where no exceptions were filed to the master's report the issues might not be raised for the first time on appeal:

> The master was directed to report all issues of fact made by the pleadings, and to take an account of the dealings and transactions between the parties, and all claims for damages arising out of said transactions. He could not intelligently discharge that duty without adopting some theory as to the scope and effect of the partnership agreement. If he went beyond the order of reference, or if the account taken by him involved a misconception of the provisions of that agreement, the defendants

should have brought those matters to the attention of the court by exceptions to the report. Having failed to do this, they cannot, in this court, for the first time, object that the master proceeded upon erroneous views as to the contract between the parties.

In this case the master's report construed the agreement of the parties with reference to the sales tax and the obligation of Patterson to continue to furnish supplies at discounts. His rulings were based on those determinations. If either party deemed them to be erroneous he should have brought those matters to the attention of the master and to the court by exceptions. Having failed to do so they cannot object that the master proceeded on an erroneous view of their contract for the first time on appeal.

Affirmed.

CORBIN and MAYFIELD, JJ., agree.