Cecil SHOPTAW and Lucille Shoptaw, Husband and Wife *v.* Robert Allen SHOPTAW and Rita Darlene Shoptaw

CA 88-370                                                767 S.W.2d 534

Court of Appeals of Arkansas
En Banc
Opinion delivered April 12, 1989

*Mobley & Smith*, by: *William F. Smith*, for appellant.

*Young & Finley*, by: *James K. Young*, for appellee Rita Darlene Shoptaw.

DONALD L. CORBIN, Chief Judge. Cecil Shoptaw and Lucille Shoptaw appeal a decree of the Pope County Chancery Court finding appellees, Robert Shoptaw and Darlene Shoptaw, husband and wife, to be the owners of a parcel of real property in Atkins, Arkansas. We disagree with appellants' contention that the trial court's decision is not supported by the evidence and affirm.

This action originated with appellee Robert Shoptaw's complaint for divorce against appellee Darlene Shoptaw. Darlene filed an answer and a counterclaim for divorce and later filed a third party complaint against appellants, Robert's parents. In her third-party complaint, Darlene alleged that appellants had conspired to defraud her of her interest in a house and lot in Atkins, Arkansas, and that the property was originally purchased by Robert and herself from Cecil's father, W.L. Shoptaw, but that the deed actually transferred the property to Lucille. Darlene also alleged in her third-party complaint that this failure to transfer the property to Robert and herself was part of a scheme to defraud her of her interest in the property.

At trial, the evidence was in sharp conflict. Darlene testified that the property was purchased in 1969 from Robert's grandfather, W.L. Shoptaw, for $1,000.00; that the property was put in Lucille's name without Darlene's knowledge; that Robert told her the property was put in Lucille's name because a lawsuit had been

filed against him; that she and Robert had built the house with money borrowed from Cecil, and that this money was fully repaid; that she and Robert paid taxes on the land to Cecil; and that there was never any question as to whom the house belonged.

Robert testified that he had not paid his grandfather for the property; that the property was purchased in 1970 because Robert and his family were living with Cecil and Lucille at the time and Cecil wanted them out of the house; that Cecil paid for the material to build the house; that W. L. Shoptaw, Robert and Cecil built the house; that he had never paid Cecil any money for taxes on the property; and that the arrangement with Lucille was that she provide a roof over the heads of Robert and his family but that the property actually belonged to Cecil and Lucille.

Cecil Shoptaw testified that Lucille had always paid taxes on the property; that Robert and Darlene did not pay him anything for the purchase of the land or the materials to build the house; and that the house was put in Lucille's name simply because she is a better business person than he (Cecil).

Lucille Shoptaw testified that the property was put in her name because Cecil's mother, Mae Shoptaw, did not want the land to get out of the family's ownership; that Cecil, Robert and W. L. Shoptaw helped build the house but that Cecil paid for it; that she (Lucille) paid taxes on the property every year; and that there was never an agreement that anyone else would own the property. On cross-examination, Lucille admitted that Cecil took care of the business and that she did not consider herself to be a good business person.

Defendant's Exhibit "A," which is a copy of the tax record regarding the property, indicates that the house on the property belongs to Robert Shoptaw and that it is on land which is leased and listed in the name of Lucille Shoptaw.

On August 11, 1988, the chancellor entered a decree in which he denied both petitions for divorce and found that Robert and Darlene are the owners of the property as tenants by the entirety. On appeal, appellants argue that the trial court's decision is not supported by the evidence.

It is the province of the trier of fact to determine the credibility of the witnesses and resolve any conflicting testimony.

*First State Bank of Crossett* v. *Phillips*, 13 Ark. App. 157, 681 S.W.2d 408 (1984). Cases on appeal from the chancery court are tried *de novo*, but we do not reverse unless the findings of the chancellor are clearly erroneous or clearly against the preponderance of the evidence, giving due deference to the trial judge's superior position to determine the credibility of the witnesses and the weight to be given to their testimony. *Day* v. *Day*, 20 Ark. App. 48, 723 S.W.2d 378 (1987).

In the case at bar, the chancellor obviously believed Darlene's testimony that appellees provided the money for the purchase of the property and that the property actually belonged to appellees. We, therefore, defer to the chancellor's opportunity to personally observe the witnesses and to evaluate their credibility and the weight to be given their testimony. Accordingly, we hold that the chancellor's finding that Robert and Darlene are the owners of the property is not clearly erroneous.

Affirmed.

MAYFIELD, J., dissents.

MELVIN MAYFIELD, Judge, dissenting. I think the majority opinion errs in two respects. In the first place, it fails to recognize the burden of proof required of the appellee, Darlene Shoptaw, to prove the allegation in her third-party complaint that the deed to the land involved was obtained by her mother-in-law in a scheme to defraud appellee of her interest in the property. In *Lipe* v. *Thomas*, 269 Ark. 827, 600 S.W.2d 921 (Ark. App. 1980), cited in the appellants' brief, Mrs. Lipe filed suit to set aside a conveyance to her daughter. It was alleged that the conveyance was gained by fraud, undue influence and duress. The court said:

> Here it is contended that the deed was obtained by duress or fraud. Under such circumstances, the law requires that the proof be clear, cogent and convincing before the deed can be set aside. *Duncan* v. *Hensley*, 248 Ark. 1083, 455 S.W.2d 113 (1970); *Davidson* v. *Bell*, 247 Ark. 705, 447 S.W.2d 338 (1969).

269 Ark. at 831.

The appellee in the present case tacitly agrees she had the burden set out in *Lipe* v. *Thomas* but says "when the burden of

proving disputed facts in chancery is by clear and convincing evidence and the chancellor then finds *that such proof has been shown*, the question on appeal is whether the chancellor's finding is clearly erroneous." (Emphasis added.) The case of *Freeman* v. *Freeman*, 20 Ark. App. 12, 722 S.W.2d 877 (1987), is cited in support of this statement, but the matter is more fully discussed in *Akin* v. *First National Bank*, 25 Ark. App. 341, 758 S.W.2d 14 (1988), where the court relied, at least in part, on the dissenting opinion in *A.B.* v. *Arkansas Social Services*, 273 Ark. 261, 620 S.W.2d 271 (1981), which stated:

> But the test on review is not whether we are convinced that there is clear and convincing evidence of the probate judge's findings, but whether we can say that the probate judge was clearly wrong in his findings.

273 Ark. at 268.

It seems obvious that evidence must be stronger to meet the requirement of proving a matter by clear and convincing evidence than is necessary to prove a matter by a preponderance of the evidence. The *Akin* opinion makes it clear that in deciding whether the chancellor's decision was clearly wrong—or clearly erroneous — we take into consideration the standard by which the chancellor had to consider the evidence before him. That is because "we continue to hear chancery cases *de novo.*" *See Akin*, 25 Ark. App. at 345.

While the majority opinion concludes that the chancellor's finding was not clearly erroneous, it totally fails to find, as the appellee concedes is necessary, that the chancellor was not clearly erroneous in finding that the evidence before him was clear and convincing. When it is recognized that on our de novo review of the evidence, we must consider that the appellee in this case had the burden of proving by clear and convincing evidence that the deed was obtained by her mother-in-law in a scheme to defraud appellee of her interest in the property and that we must determine whether the chancellor was clearly wrong—or clearly erroneous—in holding that burden had been met, I think we must reverse the chancellor's decision.

This brings me to the second respect in which I think the majority opinion is in error. In order to review the chancellor's

decision by the proper standard, we must consider *all* the evidence, but the majority opinion does not do this. For example, the opinion states that the appellee testified that when the property was purchased in 1969, the deed was put in her mother-in-law's name without the appellee's knowledge. This has to be confined to the point in time when the deed was executed, because appellee admitted that her husband told her it was put in his mother's name, that she saw the deed, that she and her husband never got a deed from anyone, and that she has known "all along" that title to the land has been in her mother-in-law's name.

In addition, the majority opinion states that "Defendant's Exhibit 'A,' which is a copy of the tax record regarding the property, indicates that the house on the property belongs to [appellee's husband] and that it is on land which is leased and listed in the name of [appellee's mother-in-law]." A witness who was employed in the tax assessor's office testified that prior to the reappraisal in 1982, the land was in the mother-in-law's name, and in 1986 the house was put on the card which showed the land owned by the mother-in-law. The witness also testified that "we just put down what people tell us. We do not go out to check to see if the house is on leased property." Appellee's husband testified than when the whole county was reassessed the people who were doing that asked who lived in the house and his daughter (while he was at work) said her parents lived there. The husband also testified that in 1986 he and his dad got it straightened out and put the property back in his mother's name. Thus, I do not think the evidence that indicated the house was on land *leased* by appellee and her husband helps prove appellee's case.

The effect of the testimony of appellee's husband and his parents is that in November of 1969 the appellee and her husband, who had been working in Texas, came back to Arkansas and, with their two children, moved into the home of the husband's parents. It was then that the husband's father bought the land, had the deed made to his wife, and helped his son build a house on the land. The husband and his parents testified that the parents paid for all the materials that went into the house, and that they let their son and the appellee live in the house rent free. They also testified that they had done the same thing for another son.

The appellee claimed her husband bought the land and the materials that went into the house. She admitted she had no records to prove this, that her husband had a poor working record and she did not know where he got the money, that they never had an insurance policy on the house, and that the title to the house was in her mother-in-law's name for 17 years before appellee ever raised any question about it.

I simply have to say that my de novo review of the evidence convinces me the chancellor was clearly wrong—or clearly erroneous—in finding that the appellee established by clear and convincing evidence that the deed to her mother-in-law was obtained in a scheme to defraud appellee of her interest in the property where she and her husband lived.

I dissent from the holding in the majority opinion.