Carol Ann LAYMAN *v.* William Joseph LAYMAN

89-81                                    780 S.W.2d 560

Supreme Court of Arkansas
Opinion delivered December 11, 1989

*Roy & Lambert*, by: *David E. Morris*, for appellant.

*Davis & Associates, P.A.*, by: *Jeff H. Watson*, for appellee.

STEELE HAYS, Justice. The only issue before us is whether the chancellor's approval of a report by a special master fixing the value of a partial interest in stock is clearly erroneous.

This is the second appeal by Carol Ann Layman. The facts are more fully stated in *Layman* v. *Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987). In the first appeal we reversed the chancellor's finding that the appreciated value of stock in Layman's, Incorporated, attributable to the time, effort and skill of Joe Layman, appellee, was not marital property within the meaning of Ark. Code Ann. § 9-12-315 (1987). We remanded with instructions to the chancellor to "determine the present fair market value of the stock in Layman's, Incorporated, reduced by the fair market value of the stock at the time of acquisition. The difference should be treated as marital property." *Layman* v. *Layman*, 292 Ark. 539, 543, 731 S.W.2d 771, pg. 774 (1987).

On remand, Mrs. Layman offered expert testimony that the enhanced value of the stock was $521,000, whereas an expert called by Mr. Layman testified to an enhanced value of $15,360. Confronted with that disparity, the chancellor appointed a special master, who submitted a report valuing the appreciation at $25,760, an amount the chancellor subsequently accepted. On appeal, the appellant argues that the chancellor erred in accepting the special master's appraisal. We cannot sustain the contention.

I

The difficulty in calculating the "fair market" value of the appellee's stock is that the stock is issued by a closely held family corporation. The chancellor found that the value of the entire corporation had increased $800,000 in net value. The articles of incorporation specifically state that the increased value of the corporation should be shared by those holding the common stock. The special master included in his report that "the $800,000 increase in value of the corporation, as determined by the court would, absent special considerations, be completely allocable to the common shares." Joe Layman owns 100, or one-half, of the common shares, and his brother Gene Layman owns the remaining 100 shares of common stock. The appellant argues that the increased fair market value of Joe Layman's stock should be one-half of $800,000, or $400,000. Furthermore, the appellant claims at least $200,000 as marital property.

In assessing the fair market value of the shares, the special

master considered the nature of the corporation, namely, a closely held family corporation. To receive value from their stockholdings, the shareholders may either upon liquidation receive proceeds, or alternatively, the stockholders may sell their stock. The special master noted that the difference in these two options focuses on control of the corporation; a vote to liquidate by the corporate board must precede the act of distributing the assets. And because Mr. W. L. Layman, father of the appellee, retains voting control of 93.57 % of all stock entitled to vote, he alone can prevent the common stock from receiving the benefits of any increase in the value to the corporation.

■ The special master recognized the significance of W.L. Layman's voting control on the fair market value of the stock in estimating the value of Joe Layman's 100 shares of common stock. Therefore, the master attempted to establish a value for the appellee's stock based upon a sale of the stock. The master then concluded that a willing buyer of the stock of the corporation must purchase both the common stock and Class A preferred stock in order to obtain effective control of the corporation. Hence, the net increase in value of the corporation, $800,000, must be apportioned between the Class A preferred shares and the common stock, pro rata. The appellee's stock then increased by the fair market value of 3.22 %[1] of $800,000, or $25,760. Of this $25,760 increase, the appellant receives $12,880 as marital property. It should be noted that even Mrs. Layman's expert conceded that because of the way the corporation was structured, there was no market for the stock because, "You are not going to find a willing buyer. I don't think you could sell it for the true definition of fair market value." Under the facts of this case we cannot say the report of the special master or the chancellor's findings were erroneous.

While we note the dissent's reference to authority outside our jurisdiction, we are not persuaded by their reasoning. *Stewart v. D.J. Stewart & Company*, 36 Ill. App. 3rd 848, 346 N.E.2d 475 (1976), involves a dissenting minority shareholder's appraisal action and sheds no light on the valuation of stock in closely held corporations for marital property distribution purposes. Like-

---

[1] The 3.22% represents the appellee's voting stock percentage.

wise, *Palmer* v. *Chamberlin*, 191 F.2d 532 (5th Cir. 1951), concerns the legality of a bylaw restricting the transfer of corporate shares. In *Palmer*, the price of shares was determined according to a formula prescribed in a company bylaw and the issue of valuation is not discussed.

The dissent focuses entirely upon the fact that the common shares are supposed to receive all the benefits from the growth of the corporation, yet overlooks the fact that the common shares exercise only 6.4% of voting control. The dissent states that the case of *Olsher* v. *Olsher*, 78 Ill. App. 3d 627, 397 N.E.2d 488 (1979), was decided under a marital property law similar to ours. Despite the similarity in marital property laws, the issues on appeal are quite different. The Illinois court held that without evidence of the respective values of the various items of marital property, including the four shares of Foremost Sales Promotion, Inc., it was impossible to divide the marital property in "just proportion." The court recognized that the shareholders of a closely held corporation do realize value from stock ownership in that they have *certain rights of control or future profits*. The Illinois court, just as the special master, recognized that the value of the shares in a closely held corporation would be a balance between these two elements.

## II

Appellee maintains the case must be affirmed under ARCP Rule 53(e)(2), and while we have chosen to deal with the merits of appellant's argument, we concede that the failure to comply with Rule 53 is an additional ground for affirmance. Rule 53(e)(2) reads in part:

> The court shall accept the master's findings of fact unless clearly erroneous. Within 20 days after being served with notice of the filing of the report, any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(c).

This provision makes acceptance of the master's report mandatory unless clearly erroneous. Moreover, the rule provides the parties with the opportunity to present objections. Here, the

special master presented his report to the court on September 26, 1988, and on the same day the chancellor granted approval. Under the rule the parties may object to the report within twenty days after being served with notice of the filing. Since the appellant received no notice of the filing of the master's report, nor any opportunity to object, the appellant properly filed a motion to set aside the report because it failed to comply with ARCP Rule 53.

■ On October 11, 1988, the chancellor set aside the September 26, 1988, order approving the special master's report and gave the parties twenty days to file written objections or exceptions to the report. On November 23, 1988, no objections or exceptions having been filed, the chancellor approved and accepted the special master's report. On appeal, the appellant presents substantive objections to the special master's report for the first time. In *Dashko v. Oil Fields Corp.*, 174 Ark. 1067, 298 S.W. 351 (1927), this court interpreted statutes similar to Rule 53 [Ark. Stat. Ann. § 27-1812 and § 27-1814 (Repl. 1962)] to mean that exceptions to the report of a master made for the first time on appeal will not be considered. *Patterson Dental Co. v. Brazil*, 14 Ark. App. 291, 688 S.W.2d 310 (1985). We have long held that the appellate court will not review the ruling or order of the trial court unless the party makes known to the trial court the action he desires the court to take or his objection to the action of the court and his grounds therefor. *Daniels v. Cravens*, 297 Ark. 388, 761 S.W.2d 942 (1988). Hence, the appellant should have filed written exceptions to the master's report in compliance with Rule 53 in order to preserve the argument on appeal.

AFFIRMED.

GLAZE, J., concurs.

PURTLE, J., and NEWBERN, J., dissent.

TOM GLAZE, Justice, concurring. I believe this court was wrong in the original appeal when we adopted the rule that the increase in value of nonmarital property is marital property when that value is attributable in part to the time, effort and skill of a spouse during the parties' marriage. *See Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987). In adopting that rule, we remanded the case so the trial court could determine the present

fair market value of the nonmarital property as well as its fair market value at the time it was acquired. The difference, we said, should be treated as marital property. Although I have problems with the rule we adopted in the prior *Layman* decision, I must follow the law of this case. The parties and trial judge did what we instructed, so we must affirm.

JOHN I. PURTLE, Justice, dissenting. We made a mistake when we sent this case back to the trial court to "determine the present fair market value of the stock in Layman's, Incorporated, reduced by the fair market value of stock at the time of acquisition." As we have now discovered, it is not possible for anyone to determine a "fair market value" for this stock, either at the time of acquisition or at the present. We should have instructed the court to determine the "fair value" of the appellee's stock at the present time and at the time of acquisition. There is a great difference in the result when it comes to determining the interests of the parties in this stock.

It is not disputed that the original plan of W.L. Layman, the appellee's father, was for all the increase in the value of the company after incorporation to benefit the common stock. In other words, the corporation was set up to enable the senior Mr. Layman to pass the benefit of the corporation and its ownership along to his children during his lifetime. The result would be that no estate tax would fall due at the time of the elder Mr. Layman's death. This strategy is a bona fide estate planning device, and it continued through the years until property disputes arose between Carol and Joseph Layman in connection with their divorce.

The disputed property at issue here is the common stock owned by Joseph Layman—specifically, the increase in value of the stock during the marriage. I disagree with the method of evaluation endorsed by the majority. A table setting out the pattern of payments upon dissolution of the corporation reveals the following:

| OWNER | CLASS A | CLASS B | COMMON PAYABLE |
|---|---|---|---|
| W.L. Layman | 2,910 | | $291,000.00 |
| W.L. Layman | | 240 | 24,000.00 |
| Joseph Layman | | 680 | 68,000.00 |

| | | | | |
|---|---|---|---|---|
| Gene Layman | | 680 | 68,000.00 | |
| Other Family | | 400 | 40,000.00 | |
| TOTAL Preferred | 2,910 | 2,000 | $491,000.00 | |
| Joseph Layman | | | 100 $\frac{1}{2}$ Balance | |
| Gene Layman | | | 100 $\frac{1}{2}$ Balance | |
| Total | 2,910 | 2,000 | 200 5,110 | 100% |

In other words, if the corporation were liquidated, Joseph Layman would receive half of any amount over the $491,000 required to pay the preferred shareholders. As of March 31, 1985, the total assets of Layman's, Inc., were valued at two million, seven hundred forty thousand, five hundred fifty-nine dollars ($2,740,559.00).

Quite apart from any reference to dissolution value, the chancellor determined that the corporation had increased in value by eight hundred thousand dollars ($800,000.00) during Carol and Joseph Layman's marriage. It is safe to speculate that beyond this $800,000 increase in corporate value, the corporation would be solvent enough to cover the preferred stock liquidation figure of $491,000. The $800,000 increase accrues solely to the common stockholders, and Joseph Layman owns half of the common stock.

In January, 1986, Joseph Layman stated in his deposition that the retained earnings belonged to the common stock and that his accountant valued his stock "between three and four hundred thousand dollars." However, by the time this case was heard, he had changed his mind. He further admitted then and at the trial that his father set the corporation up in a manner to insure that the father would have total control of the corporation during his lifetime and that he would approve how the money was spent and what happened to the corporation. At his death, the corporation would transfer control to the children, and there would be no increased value, other than par, in the stock which the elder Layman still held.

It may be useful, for an understanding of this case, to set out the ownership and type of shares with the voting rights of the parties as determined by the trial court:

| VOTING STOCK | #SHARES | TYPE | % VOTE |
|---|---|---|---|
| W.L. Layman | 2,910 | (Preferred) | 93.57 |
| Joseph Layman | 100 | (Common) | 3.22 |
| Gene Layman | 100 | (Common) | 3.22 |
| TOTAL | 3,110 | | 100.00% |

Obviously, W.L. Layman knew what he wanted to accomplish when he set up the corporation. He also knew that the growth of the corporation, so far as its earnings were concerned, would inure to the benefit of the owners of the common stock, who are his two sons. Due to the fact that this closely held corporation was established in this manner and has followed this plan since incorporation over a decade ago, we should not now allow the shareholders to effectively transform the corporate structure for the purpose of preventing the appellant from receiving what I consider to be her fair share of the marital property.

I return to the phrase "fair market value" of the stock. In a family-held closed corporation, there is no established market value for the stock. The shares are not listed on any exchange and have no trading value through brokers. Even though there is no determinable market value for such shares, it does not mean that the owners of the stock do not receive benefits from their ownership. Courts have many times recognized that there is an ascertainable value for shares of stock in a close corporation. See *Olsher* v. *Olsher*, 397 N.E.2d 488 (Ill. App. 1979). The *Olsher* case was decided under a statute which was quite similar to the Arkansas statute on the division of marital property, inasmuch as an equal distribution of the property is not required. The trial court should consider all relevant factors before establishing a value of the ownership of stock in a closely held corporation. The *Olsher* opinion stated:

> In the present case we find that in the absence of evidence of the stock's value, the trial court's division of the property was an abuse of discretion. Clearly, without evidence of the respective values of the various items of the marital property it was impossible for the court to divide the marital property in "just proportion" as required by the statute.

In *Palmer* v. *Chamberlin*, 191 F.2d 532 (5th Cir. 1951), the court held that when there were two or more classes of outstanding stock in a closely held corporation, the first step in evaluating the stock was to set aside an amount to liquidate a preference of preferred stockholders. The balance was then to be divided by the number of common shares outstanding in order to obtain the "book value" of each common share.

In a case somewhat analogous to the present one, an Illinois appellate court was confronted with the problem of establishing the fair value of stock. See *Stewart* v. *D.J.Stewart and Co.*, 346 N.E.2d 475 (Ill. App. 1976). From different formulas two witnesses concluded that the fair value of the stock was $195 or $600 per share. The trial court established the fair value of the minority stock in that case to be $660 per share. The *Stewart* opinion quoted with approval the following language from *Ahlenius* v. *Bunn & Humphreys*, 192 N.E. 824 (Ill. 1934): " 'Every relevant evidential fact and circumstance entering into the value of the corporate property and reflecting itself in the worth of corporate stock' may be considered in determining the value of the stock."

In his article, *Restrictions on Transfer of Stock in Closely Held Corporations: Planning and Drafting*, 65 Harvard Law Review 733 (1952), Professor F. Hodge O'Neal treats this subject in much more detail. He sets forth the proper procedure in establishing evaluation of payment on transfer of restricted shares in a closely held corporation. O'Neal recognizes that no one formula is appropriate for all occasions. However, he does treat the numerous methods that have been used for establishing the value of shares in a closely held corporation. These are: (1) computation of book value; (2) establishment of the price at par or some other aribtrary figure mutually agreed on by the shareholders at the time the restrictions are imposed; (3) ascertainment of the market price of the shares or the highest price that a bona fide prospective purchaser will give; (4) determination of capitalized earnings; (5) analysis of appraisals; (6) authorization of the board of directors or other shareholders to set a value; (7) application of an A.R.M. 34 or "years' purchase" type formula; (8) employment of the valuation imposed by tax authorities for estate inheritance tax purposes; and (9) adoption of a combination of two or more of these methods.

O'Neal notes that the book value of outstanding stock is a commonly used method for establishing value, but he emphasizes that it is frequently the most unsatisfactory method of determining the value of such stock. Book value, he writes, is an unreliable guide to the true worth of a going business. It is O'Neal's opinion that a combination of the above-mentioned methods is more suitable than any single formula in determining the value of closely held stock.

Had the court employed a recognized formula, it could not have reached the inequitable result reflected in this case. By using a combination of the methods of valuation—and common sense—it can easily be established that the "fair value" of the appellee's common stock should be analyzed in the light of the ownership of the common shares. It is, after all, the holders of the common stock who benefit from the growth of the corporation.

The master's report, which was adopted by the chancellor, found that there was an $800,000 increase in the value of the corporation during the marriage. However, this increase was then apportioned between the class A preferred shares and the common stock, *pro rata*. The formula employed by the master has no relation to "fair market value." It was, however, the only way to prevent the appellee from having to pay what I consider to be a fair and just award to his wife.

Moreover, the record reveals that for salary and bonus purposes, the appellee received 50 % of the dividends or payments of the corporation. He received an annual salary of $91,500 and a bonus of $91,500. Only 200 shares of common stock are outstanding. There are, however, 2,910 shares of preferred stock outstanding. In determining the increased value of Joseph Layman's common stock, the master multiplied the increase in corporate value ($800,000) by Joseph Layman's percentage of voting control (3.22%) and arrived at the ridiculously low figure of $25,760. This amount was divided equally to award Carol Layman $12,880. (Compare these figures with the $521,000 increase in value of Joseph Layman's stock estimated by James Sandlin, a certified public accountant with twenty-five years experience.) Such disparity obviously deserves closer examination than the majority opinion has given.

The master has misapplied the meaning of "fair market

value," "fair value," and even "book value" by creating this method of valuation. While voting control is certainly a crucial aspect in the day-to-day operation of a close corporation, in this situation its sole importance is to show W.L. Layman's business acumen in setting up the corporation. The bottom line is that the owners of the common stock were supposed to receive the lion's share of the corporate growth and profit. I am sure Joe Layman will receive what was intended after this opinion is final. The master failed to adequately address or explain the problems involved in valuing the stock of closely held corporations. See O'Neal & Thompson, *O'Neal's Close Corp.* § 1.07 (3d Ed.)

Layman's, Incorporated, is an Arkansas business corporation which was established in 1978. Previously, it had been operated as a sole proprietorship. At the time of incorporation, the parties to this action had been married for many years. Obviously, the stock came to Joseph Layman during the marriage. We have already determined that part of it was by gift and that the wife was not entitled to any part of the gifts.

We did determine, though, that she was entitled to share in the increase in the value of the stock during the 31 years of marriage. Unfortunately, we rather loosely stated that the chancellor should determine the "fair market value" of the property, then and now, instead of specifying "fair value." The master stated in his report that "It is my determination that a willing buyer of the stock of the corporation must purchase both the common stock and Class A preferred stock in order to obtain effective control of the corporation." It would be unnecessary, however, to purchase any of the common stock in order for one to gain control of the corporation.

The corporate or business term-of-art, "fair market value," requires an agreement on price between a willing buyer and a willing seller on the open market. *Southern Bus Co.* v. *Simpson*, 214 Ark. 323 at 325, 215 S.W.2d 699 (1948). I question whether Joseph Layman would sell his stock for $25,760, considering the livelihood he derives from his role in the corporation. It was patently unfair to use Joseph Layman's 3.22 percent of voting to derive the increase in value of his common stock. This method of valuation appears to be an unrealistic effort to achieve a result that will hopefully comply with the impossible mandate of this

court. The majority is now telling the wife of 31 years and mother of three grown children that in reality she is going to get exactly 3.22 percent of the increase in value of the stock during the marriage. For other purposes Joseph Layman's 3.22 percent ownership netted him 50 percent of the corporate growth, which amounts to $400,000.

Further comment serves no purpose. On remand, I would have the chancellor determine the "fair value" of the increase in this property during the marriage. An equitable share of $400,000 is obviously more than $12,880. Certainly, what has been accomplished is far from a division in keeping with the spirit of the Arkansas Marital Distribution Statute. Furthermore, the result in this case is, in my opinion, simply unconscionable.

NEWBERN, J., joins.