Harry McDERMOTT *v.* Rhonda McDERMOTT

98-1169                                    986 S.W.2d 843

Supreme Court of Arkansas
Opinion delivered March 11, 1999

*Lee Linzay*, for appellant.

*Thomas J. Olmstead* and *Thomas B. Burke*, for appellee.

ANNABELLE CLINTON IMBER, Justice. In this divorce case the central issue is whether an attorney's contingency-fee agreements entered into during marriage are marital property under Ark. Code Ann. § 9-12-315 (Repl. 1998). The appellant, Mr. Harry McDermott, contends the trial court erred when it declared that certain contingency-fee agreements secured in conjunction with his law practice were marital property. We affirm the trial court's decision as modified.

The parties were married in 1993 and separated in January 1998. At all relevant times, Mr. McDermott has been an attorney actively engaged in the practice of law, with his practice primarily sustained through contingency-fee agreements. Mrs. McDermott has been a professor at the University of Arkansas at Fayetteville. Mr. McDermott testified that he had approximately twelve contingency-fee cases pending at the time of the divorce. Two of those cases had been reduced to judgment, but there had been no recovery on those judgments at the time of the divorce.[1] All twelve of the contingency fee agreements were in writing, and each agreement specified the percentage of any recovery Mr. McDermott was to receive as his fee should the case be resolved in favor of his client. Mr. McDermott's percentage was to be one-third of any recovery in nine of the cases; one-half of any recovery in two of the cases; and one-fourth of any recovery in the remain-

---

[1] One judgment has since been overturned on appeal by the Arkansas Court of Appeals. *See Unicare Homes, Inc. v. Gribble*, CA 98-28, opinion delivered October 28, 1998.

ing case. Finally, Mr. McDermott testified that he was obligated to pay all expenses in the two cases where his percentage was one-half of any recovery. However, he was uncertain whether any of the other contracts obligated him to pay all expenses.

The trial court held that the contingency-fee agreements constituted marital property under Ark. Code Ann. § 9-12-315, and that Mrs. McDermott was therefore entitled to a marital share of any compensation received by Mr. McDermott under the contingency-fee agreements.[2] The trial court further held that it would retain jurisdiction of the cause for the purpose of assigning the marital share to each party as fees earned under the contingency agreements are received. The trial court directed Mr. McDermott to deposit fifty percent of any fees earned in an interest-bearing account where the funds were to be held in trust pending a final determination of the marital share by the court. Mr. McDermott appeals the trial court's decision and contends that the contingency-fee contracts are not marital property.

Arkansas Code Annotated § 9-12-315 (Repl. 1998) defines "marital property" as "all property acquired by either spouse subsequent to the marriage," subject to certain exceptions which are inapplicable here. There is a presumption that all property acquired during a marriage is marital property. *Layman v. Layman*, 292 Ark. 539, 731 S.W.2d 771 (1987); *Boggs v. Boggs*, 26 Ark. App. 188, 761 S.W.2d 956 (1988). Whether or not property is marital does not depend upon when the property is received, but rather depends upon when the right to the property is acquired. *Bunt v. Bunt*, 294 Ark. 507, 744 S.W.2d 718 (1988); *Liles v. Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986); *Dunn v. Dunn*, 35 Ark. App. 89, 8 S.W.2d 11 S.W.2d 336 (1991). To the extent that any party to the marriage acquires an enforceable right during the marriage, they acquire marital property. *See, e.g., Bunt, supra.*

---

[2] According to its opinion letter dated June 26, 1998, which was incorporated by reference into the divorce decree, the trial court reserved jurisdiction to determine the value of Mrs. McDermott's interest in the contingency fee contracts "based on the reasonable value of services during the marriage." This language is somewhat different from the language contained in the divorce decree.

In 1984, we realized that we had inadvertently failed to recognize the new concept of "marital property" created by Act 705 of 1979, which defined marital property as all property acquired by either spouse subsequent to the marriage, subject to certain exceptions. *See Day v. Day*, 281 Ark. 261, 663 S.W.2d 719 (1984). In *Day*, we held that pension plan benefits were marital property to the extent that a spouse had a vested interest in those benefits. *Id.* This decision represented a shift away from our previous case law, which had held that such benefits, even if vested, were not marital property until they became due and payable. *See Sweeney v. Sweeney*, 267 Ark. 595, 593 S.W.2d 21 (1980) (decided under prior statute); *Knopf v. Knopf*, 264 Ark. 946, 576 S.W.2d 193 (1979). In *Day*, Mr. Day had used family funds to purchase pension plan benefits. *Day, supra.* Mrs. Day had contributed to those funds by service as a homemaker and by bearing and raising the couple's children. *Id.* We held that Mr. Day's vested pension benefits were marital property under the new statutory concept of marital property. *Id.* We reasoned that benefits should be considered "vested," or more than a mere expectancy, once they cannot be unilaterally terminated by the employer without also terminating the employment relationship. *Id.* In support of this conclusion, we quoted with approval the Supreme Court of California in *In Re Marriage of Brown*, 544 P.2d 561 (Cal. 1976):

> The term expectancy describes the interest of a person who merely foresees that he might receive a future beneficence, such as the interest of an heir apparent . . . or a beneficiary designated by a living insured who has a right to change the beneficiary . . . . As these examples demonstrate, the defining characteristic of an expectancy is that its holder has no enforceable right to his beneficence.

*Day, supra.* We concluded that the enforceable right to pension benefits constituted marital property. *Id.* In doing so, we held that earnings or other property acquired by a spouse subsequent to a marriage must be included as marital property unless it fell within certain statutory exceptions, and that neither party could deprive the other of any interest in such property by putting it temporarily beyond his or her control through some device for postponing full enjoyment of the property. *Id.*

Our cases since *Day* have continued to focus on enforceable rights acquired subsequent to marriage. In *Gentry v. Gentry*, 282 Ark. 413, 668 S.W.2d 947 (1984), we held that a husband's civil service retirement benefits were marital property subject to distribution. In *Morrison v. Morrison*, 286 Ark. 353 (1985), we held that disability retirement benefits were marital property even though such benefits are awarded for personal injury to one's own body. Our rationale was that such benefits come from an annuity purchased during the marriage and, thus, there was no discernable distinction between an annuity payable upon disability and one payable upon longevity. *Id.*

In 1985 we held for the first time that a workers' compensation claim for an injury suffered during the marriage was marital property subject to distribution. *Goode v. Goode*, 286 Ark. 463, 692 S.W.2d 757 (1985). At the time of the divorce, Mr. Goode's claim had not yet been adjudicated, though he had received and refused an offer of settlement. *Id.* We noted that although Mr. Goode's claim was unliquidated at the time of the divorce, he still possessed an enforceable right to workers' compensation benefits. *Id.* Because that right accrued to him subsequent to his marriage and prior to his divorce, it was marital property. *Id.*

In *Goode* we acknowledged our previous decision in *Lowrey v. Lowrey*, 260 Ark. 128, 538 S.W.2d 36 (1976), in which we held that an unliquidated personal injury claim was not personal property for the purpose of property division. However, we declined to follow *Lowrey* because it was decided under the former marital property statute. *Goode, supra.* We reasoned that a rule which invites workers' compensation claimants to protract arbitration so as to shield an award from equitable division should not be condoned. *Id.* Furthermore, the fact that such claims do not involve contributions is not relevant, because Ark. Code Ann. § 9-12-315 makes no general distinction as to the manner in which the item of property is acquired. *Id.* As workers' compensation claims were not among the exceptions enumerated in the statute at that time, we held that such claims were marital property. *Id.*

In 1986 we applied the reasoning of *Goode* to a Jones Act personal injury claim. *Liles v. Liles,* 289 Ark. 159, 711 S.W.2d

447 (1986). In *Liles*, the claim was liquidated, although part of the judgment was to be received in the future pursuant to a structured settlement. *Id.* We held that the personal injury claim was marital property insofar as it was acquired by one spouse subsequent to the marriage and was not specifically excepted by Ark. Code Ann. § 9-12-315. *Id.* The appellant in *Liles* had also received a remittitur of attorney's fees from his Jones Act judgment after the divorce. *Id.* The appellant claimed that the returned fees belonged solely to him, as they were no more than a "contingent claim during the marriage and not to be considered marital property." *Id.* In support of this proposition, the appellant cited *Potter v. Potter,* 280 Ark. 38, 655 S.W.2d 382 (1983), in which we held that fees earned by an attorney during marriage but not collected until after the divorce were not marital property. We responded to appellant's argument by noting that the *Potter* decision preceded *Day, supra,* and that, given the same situation, we might reach a different conclusion. *Liles, supra.* We concluded that the fees were a part of the judgment and thus were marital property. *Id.*

Subsequent to our decisions in *Goode* and *Liles,* the General Assembly added an exception to the definition of "marital property" as follows: "Benefits received or to he received from a Workers Compensation claim or personal injury claim when such benefits are for any degree of permanent disability or future medical expenses." Ark. Code Ann. § 9-12-315(b)(6) (Supp. 1987). By limiting the exception to portions of personal injury and workers' compensation claims for permanent disability or future medical expenses, the General Assembly otherwise left intact our *Goode* and *Liles* decisions interpreting the definition of "marital property," as set forth in Ark. Code Ann. § 9-12-315, to include workers' compensation and personal injury awards. *See Bunt v. Bunt,* 294 Ark. 507, 744 S.W.2d 718 (1988).

Finally, in 1988, we held that any personal injury claim acquired during the marriage, whether liquidated or unliquidated, was marital property. *Bunt, supra.* Mr. Bunt had been injured in an automobile accident. *Id.* At the time of the divorce, he had not filed suit on the claim, and had been offered no settlement by the insurance company. *Id.* Mr. Bunt contended that the rule announced in *Goode* applied only when some appreciable steps

had been taken toward liquidation of the claim. *Id.* We rejected Mr. Bunt's contention, noting that " the argument that no definite value can be assigned to the claim until an award is made . . . is no more persuasive here than in *Goode.*" *Id.* We also pointed out that to hold that personal injury claims are marital property only to the extent that they are "liquidated" would place claimants in the position of being able to manipulate the claim so as to "liquidate" it after divorce, thereby having the ability to determine whether or not it is included in marital property. *Id.* We had previously held in *Goode* that such a result was unacceptable. *Goode, supra.* We, therefore, held that to the extent Mr. Bunt acquired an enforceable right during the marriage to recover for personal injury, he acquired marital property. *Bunt, supra.* We have since applied the *Bunt* holding to an unliquidated FELA claim for personal injury. *See Clayton v. Clayton,* 297 Ark. 342, 760 S.W.2d 875 (1988).[3]

With regard to whether attorney's fees should be deemed marital property subject to division in a divorce action, we have specifically addressed the issue of accounts receivable and "work in progress" in *Potter, supra,* and *Meeks v. Meeks,* 290 Ark. 563, 721 S.W.2d 653 (1986). *Potter* involved fees earned before the marriage, but received during the marriage, and fees earned during the marriage, but not collected during the marriage. *Potter, supra.* We held that the property, or fees, must actually be received before it can be characterized as marital property. *Potter, supra.* Mr. McDermott relies on the *Potter* holding as support for his contention that the contingency-fee contracts are not marital property because they have no definite present value and remain uncollected. However, we noted in *Day* that *Potter* was one of several decisions which failed to give full effect to Act 705 since its

---

[3] A majority of jurisdictions that have considered this issue have held that a personal injury claim constitutes *property* even if there has not yet been a verdict or settlement, consistent with our holding in *Bunt. See Raccio v. Raccio,* 556 A.2d 639 (Conn. Super. Ct. 1987); *In re Fields,* 779 P.2d 1371 (Colo. Ct. App. 1989); *Boyce v. Boyce,* 541 A.2d 614 (D.C. 1988); *In re Burt,* 494 N.E.2d 868 (Ill. App. 1986); *Hanify v. Hanify,* 526 N.E.2d 1056 (Mass. 1988); *Heilman v. Heilman,* 291 N.W.2d 183 ( Mich. App. 1980); *Covington v. Covington,* 412 S.E.2d 455 (S.C. 1991); *Richardson v. Richardson,* 407 N.W.2d 231 (Wis. 1987).

enactment in 1979 (now codified as Ark. Code Ann. § 9-12-315). *Day, supra.* Finally, we relied upon our decision in *Day* when we overruled the *Potter* holding in *Meeks, supra,* and held that accounts receivables and "work in progress" were marital property under section 9-12-315. According to *Meeks,* the pivotal question is not when the property is collected or received, but rather when an enforceable right to the property is acquired. *Meeks, supra.*

This appeal presents an issue of first impression concerning whether or not contingency-fee contracts entered into during marriage are marital property under section 9-12-315. The resolution of this issue is governed by the above-cited cases that have interpreted section 9-12-315, beginning with *Day, supra,* and culminating in *Bunt, supra.* If an enforceable right is acquired during marriage by virtue of a contingency agreement, then the agreement is marital property. *Bunt, supra; Goode, supra.*

■ It is axiomatic that the right to perform a contract and to receive its profits, and the right to performance by the other party, are property rights entitling each party to the fulfillment of the contract by performance. *Mason v. Funderburk,* 247 Ark. 521, 446 S.W.2d 543 (1969). In other words, enforceable contract rights are deemed to be property rights.

The General Assembly has expressly protected the contractual rights of attorneys in their fee agreements with clients by the enactment of the attorney's lien statute, now codified at Ark. Code Ann. § 16-22-302 to 304 (1989). The legislature's intent is set forth in section 16-22-301:

> Therefore, it is the intent of §§ 16-22-302 — 16-22-304 to allow an attorney to obtain a lien for services based on his or her agreement with his or her client and to provide for compensation in the case of a settlement or compromise without the consent of the attorney.

We have interpreted these provisions to allow recovery based upon the fee agreement when the termination was without cause. *See Crockett & Brown, P.A. v. Courson,* 312 Ark. 363, 851 S.W.2d 453 (Supp. Op. 1993). However, when an attorney is terminated with cause, the attorney only has a right to *quantum meruit* recovery for the reasonable value of his or her services. *See Henry, Walden, &*

*Davis v. Goodman,* 294 Ark. 25, 714 S.W.2d 233 (1987); Ark. Code Ann. § 16-22-304 (1989).

■ Based upon our case law and statutory law, there are enforceable contract rights in contingency-fee agreements and those rights are property rights. The rationale for this conclusion is derived from the approach taken by *Bunt* to the effect that any enforceable right to future benefits, whether subject to a contingency or not, is not a mere expectancy, but a form of property that is subject to division if acquired subsequent to marriage. *Bunt, supra; see also* B.H. Goldberg, *Valuation of Divorce Assets,* § 7.5 (1984). Therefore, to the extent a spouse acquires an enforceable right during the marriage to recover fees under a contingency-fee contract, we hold that the spouse acquired marital property under Ark. Code Ann. § 9-12-315. *See Bunt, supra; Liles, supra; Goode, supra.*

We note that this same conclusion has been reached by a majority of jurisdictions considering this issue. *See Garrett v. Garrett,* 683 P.2d 1166 (Ariz. Ct. App. 1984); *In re Marriage of Kilbourne,* 284 Cal. Rptr. 201 (Cal. Ct. App. 1991); *In re Marriage of Vogt,* 773 P.2d 631 (Colo. Ct. App. 1989); *Due v. Due,* 342 So. 2d 161 (La. 1977); *Quinn v. Quinn,* 575 A.2d 764 (Md. Ct. Spec. App. 1990); *Lyons v. Lyons,* 526 N.E.2d 1063 (Mass. 1988); *In re Marriage of Estes,* 929 P.2d 500 (Wash. Ct. App. 1997); *Metzner v. Metzner,* 446 S.W.2d 165 (W. Va. 1994); *Weiss v. Weiss,* 365 N.W.2d 608 (Wis. Ct. App: 1985); *see also* Charles W. Davis, Annotation, *Divorce and Separation: Attorney's Contingent Fee Contracts As Marital Property Subject To Distribution,* 44 A.L.R.5th 671 (1996). We recognize that a minority of jurisdictions oppose construing such contracts as marital property on the basis that such fees are speculative in nature. *See, e.g., Roberts v. Roberts,* 689 So. 2d 378 (Fla. Dist. Ct. App. 1997); *Goldstein v. Goldstein,* 414 S.E.2d 474 (Ga. 1992); *In re Marriage of Zells,* 572 N.E.2d 944 (Ill. 1991); *Musser v. Musser,* 909 P.2d 37 (Okla. 1995).

■ In contrast to those jurisdictions that have declined to construe contingency-fee contracts as marital property because ascertaining their value may be difficult, we specifically stated in *Bunt* that any argument relating to an inability to place a definite

value on an asset is unpersuasive. *See Bunt, supra.* Thus, the difficulty of valuation, without more, should not preclude Arkansas courts from considering contingency-fee contracts as marital property if they were acquired during the marriage. *See Layman v. Layman*, 300 Ark. 583, 780 S.W.2d 560 (1980).

Any difficulty in valuing contingency-fee contracts may be solved by reserving jurisdiction in the trial court in order to await the outcome of the underlying actions. When the proceeds of contingency-fee agreements are actually received, the determination of the marital share in the ultimate recovery should be based upon that portion of the time devoted to the case during the marriage, as compared to the full amount of time devoted to earning the fee. This approach has been utilized by a number of courts in valuing contingent fee contracts for purposes of equitable division. *See Garrett, supra; Metzner, supra; Weiss, supra; Vogt, supra; Estes, supra.*

Mr. McDermott also suggests that sharing contingent fees with a former spouse would violate Rule 5.4 of the Model Rules of Professional Conduct. Rule 5.4(a) provides that "A lawyer or law firm shall not share legal fees with a non-lawyer." Fees earned during marriage are necessarily shared with a non-attorney spouse. This has never been viewed as a violation of the Rules of Professional Conduct. Nor does an obligation to share a portion of fees with a former spouse violate the Rules of Professional Conduct, so long as it is limited to that portion of the fee earned by the attorney's efforts during the marriage. *See In re Marriage of Estes, supra.* The sharing of such fees with a former spouse does not implicate any of the evils contemplated by Rule 5.4. *Id.*

We therefore affirm the trial court's decision that the contingency-fee contracts acquired during the marriage were marital property under Ark. Code Ann. § 9-12-315. We also affirm its decision to retain jurisdiction over the matter pending the outcome of the underlying actions. However, the trial court's decision should be modified to provide that the marital share of proceeds received under the contingency-fee contracts is limited to the portion of the fee attributable to work done during the marriage. *See Vogt, supra.* Thus, the marital share should be based

upon the percentage of the number of hours worked during the marriage as compared to the total number of hours worked earning the fee. *See In re Marriage of Estes, supra.* We note that the trial court is not required to divide any asset equally between the parties if equity demands a different division, and the reasons for such division are stated. *See* Ark. Code Ann. § 9-12-315(a)(1)(B).

Affirmed as modified.

GLAZE and SMITH, JJ., concur.

BROWN, J., not participating.

TOM GLAZE, Justice, concurring. I concur, but do so only because *Goode v. Goode*, 286 Ark. 463, 692 S.W.2d 757 (1985), and *Bunt v. Bunt*, 294 Ark. 507, 744 S.W.2d 718 (1988) — both 4-3 decisions — support the result reached by the majority opinion. My actual view is that the rationale upon which *Goode* and *Bunt* are premised is erroneous. However, eleven years have passed and the General Assembly has failed to fully address and correct the problems raised and discussed in the dissents in those cases, so it appears time for me to join precedent.[1]

My main disagreement with the majority opinion and the cases it cites has to do with the consistent failure of those cases to mention, much less follow, the plain language of Arkansas's marital-property statute. In this respect, Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 1998), reads: *[A]t the time a divorce decree is entered, all marital property shall be distributed* one-half to each party unless the court finds such a division to be inequitable. (Emphasis added.) Ark. Code Ann. § 9-12-315(b) then provides that "marital property" means all property acquired by either spouse subsequent to the marriage. In construing this 1979 marital-property

---

[1] In fairness to the General Assembly, I do note that, after the *Goode* decision, the General Assembly corrected the *Goode* holding to the extent it excluded benefits received or to be received from a workers' compensation claim, personal injury claim, or social security claim, when those benefits are for any degree of permanent disability or future medical expenses. *See* Acts 676 of 1987 and 1167 of 1991, codified at Ark. Code Ann. § 9-12-315 (Repl. 1998). In other words, the General Assembly provided that unliquidated or expectancy claims or benefits representing permanent disability or future medical expenses are excepted from the "acquired" marital property provision.

law, our court established the rule in 1983 that all marital property must be distributed when the parties' divorce decree is entered. *Forrest v. Forrest*, 279 Ark. 115, 649 S.W.2d 173 (1983).

The majority opinion cites *Mason v. Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969), to support the proposition that appellant Harry McDermott's contingent-fee contracts contained enforceable property rights in which appellee Rhonda McDermott has divisible and distributable marital property interests. In reality, appellee has nothing more than an inchoate interest in the contingent-fee contracts the appellant entered into with third parties, and unless those contracts actually produced benefits of some determinable value during the marriage, no property rights can be vested or distributed as marital property at the time of divorce. In short, under the language of our statute, § 9-12-315, and all the relevant cases interpreting it, appellee is only entitled to marital property that has vested and is distributable when the parties' divorce decree is entered. *See Day v. Day*, 281 Ark. 261, 663 S.W.2d 719 (1984) (court held husband's *vested* pension benefits were marital property); *Gentry v. Gentry*, 282 Ark. 413, 668 S.W.2d 947 (1984) (court held husband's pension distributable as marital property subject to distribution where all requirements for receiving *benefits* occurred during marriage, husband was *fully vested* and he was receiving benefits at the time of divorce); *Morrison v. Morrison*, 286 Ark. 353, 692 S.W.2d 601 (1985) (court held where, during marriage, husband with marital earnings purchased an annuity policy that paid monthly disability payments and he was receiving $1,165.00 per month at the time of the parties' divorce, such monthly *benefits actually being paid* were distributable as marital property); *Liles v. Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986) (court held a *liquidated Jones Act claim* reduced to settlement was distributable as marital property at the time of divorce). (Emphasis added.)

From my research, the *Goode* and *Bunt* decisions are the only ones that fail to require marital property to be, at the minimum, liquidated or vested so the property can be distributed at the time of the parties' divorce. In my opinion, those two decisions are simply inconsistent with the plain terms of § 9-12-315 and other cases interpreting marital property. Hopefully, the General

Assembly may still act to give clarity to this statute where our court has failed. Until that happens or until this court realizes its errors in *Goode* and *Bunt*, I will concur in this and future cases where the rationale and holdings in *Goode* and *Bunt* appear controlling.

SMITH, J., joins this concurring opinion.