Suzanne H. CRISMON *v.* John S. CRISMON

CA 00-65                                                      34 S.W.3d 763

### Court of Appeals of Arkansas
### Divisions III and IV
Opinion delivered December 13, 2000
[Petition for rehearing denied January 17, 2001.* ]

---

* BIRD and GRIFFEN, JJ., would grant.

*Eichenbaum, Liles & Hester, P.A.,* by: *James H. Penick, III,* for appellant.

*Dover & Dixon, P.A.,* by: *Gary B. Rogers* and *Monte D. Estes,* for appellee.

K MAX KOONCE, II, Judge. This is an appeal of an order addressing property division in a divorce. The issues on appeal concern the Chancellor's application of a "fair market value" standard for valuing the parties' interest in an ongoing business, and the Chancellor's interpretation of certain terms in a property settlement agreement.

We find no reversible error on either point and, therefore, affirm. The parties to this case were divorced on September 15, 1996. A property settlement agreement was entered at the time of the divorce. At issue is the valuation of the appellee's business, consisting of a partnership with his "good friend," Larry Garland, in two convenience stores and certain commercial property. During the pendency of the divorce, the appellee's fifty-percent stake in the partnership was valued from $462,000 to $829,000 according to a September 1997, financial statement. Earlier personal financial statements prepared by appellee valued his interest at $320,000 on July 16, 1992, $355,000 on October 26, 1993, and $682,000 on October 23, 1997. The appellant attempted to become a partner in the business (pursuant to the property settlement, where she took over all interest in the convenience stores, and the husband retained all interest in his own pension accounts), but Garland refused. The

appellant then filed for relief from the court in the form of a Petition for Determination of Rights and Valuation of Property, seeking one-half of the appellee's partnership interest (and one-half of his pension plan), and seeking to enforce annual income guarantees and distribution of the appellee's bonus. In the Decree of Divorce, a bonus of $7,500 was anticipated, and was ordered to be given entirely to Mrs. Crismon.

At trial, the appellee's partner, Larry Garland, testified that the fair market value of the entire partnership was $350,000 based on his experience and numerous uncertainties inherent in the business. The appellant's expert testified that under a "fair value" standard, the partnership was worth in excess of $1 million, and the appellee's partnership interest was worth $555,000. The expert then applied a *"reasonable marketability discount"* of ten-percent, for a final valuation of the appellee's interest at $500,000. The appellant's expert did not include any discount in her written report. The appellee's expert valued a fifty-percent stake in the partnership at $286,000 based on a cash flow discount rate of fifteen-percent and a marketability discount of twenty-five percent. The court ruled that the value of the property was $365,000 using a twelve-percent discount rate.

In its written order, the court awarded the appellant $182,500, representing one-half of the court's valuation of the partnership interest in the Garland-Crismon business.[1] The court also found that the bonus in dispute had already been distributed, and denied any further relief on that point, or on the issue of the "guaranteed salary" promised in the property settlement. From that order comes this appeal, with appellant arguing for reversal on two points: 1) the court erred in applying a discount in its valuation of the Garland-Crismon partnership, and 2) the court erred as a matter of law in its interpretation of the property settlement.

Chancery cases are reviewed *de novo*, and the chancellor's findings will not be disturbed unless they are clearly erroneous or clearly against the preponderance of the evidence. *O'Neal v. O'Neal*, 55 Ark. App. 57, 929 S.W.2d 725 (1996).

---

[1] The court also ordered that the appellant would receive one-half of the appellee's pension, but that determination is not in dispute in this appeal.

■■ Here, after hearing conflicting expert testimony on the value of the appellee's interest in the partnership, the chancellor made a finding of fact that the value of the partnership was $365,000 based on a fair market value standard. It is the province of the trier of fact to determine the credibility of witnesses and resolve conflicting testimony. *Shoptaw v. Shoptaw*, 27 Ark. App. 140, 767 S.W.2d 534 (1987). While there is conflicting argument on whether a "fair value" standard should be borrowed from other jurisdictions' case law on shareholder suits, the Arkansas Supreme Court has explicitly approved the use of the "fair market value" standard for valuing closely held businesses in a marital property division context. *See Layman v. Layman*, 300 Ark. 583, 780 S.W.2d 560 (1989) and *Skokos v. Skokos*, 333 Ark. 396, 968 S.W.2d 26 (1998). Further, the term "fair market value" is used in the marital property statute at Ark. Code Ann. § 9-12-315 (a)(4) (Repl.1999). Based on these authorities, the chancellor's use of a "fair market value" standard is not clearly erroneous.

■ Implicit in the appellant's first allegation of error is whether the trial court erred in applying the "marketability discount" in the valuation calculation. The appellant argues that controlling Arkansas case law supports her position and directs this court's attention to *Jones v. Jones*, 29 Ark. App. 133, 777 S.W.2d 873 (1989). In *Jones*, this court refused to accept a thirty-two percent reduction in the value of an accounting firm that was based on the firm losing roughly one-third of its customers if one of its partners was forced to sell his interest. Additionally, our court held that there was no evidence that the firm was contemplating selling the one-third interest, and therefore the value of the firm should not be reduced. We also rejected a $6,000 "rounding down" of the estimated value. In the *Jones* decision our court did not specifically reject applying a "marketability" discount to marital property divisions of businesses, but found that the justification for the discount (based on a buy-sell agreement among the partners and the anticipated loss of business if a partner left) was not appropriate under the facts of that case. In the present case, the discount(s) in dispute do not purport to represent future lost business, as in *Jones*, but reflect expenses that would be incurred in marketing and selling the partnership interest. Further, pursuant to our *de novo* review, we did not reverse in the *Jones* case, but simply modified the chancellor's valuations, and affirmed as modified. *Id.*

■ Finally, the appellant takes issue with the application of two provisions in the settlement agreement. First, the appellant argues that the court erred in failing to award her $7,500 for the appellee's bonus as stated in the decree. The appellee stated in pleadings that he paid $5,400 to appellant, representing the entire bonus paid to him (with the remaining twenty-eight percent being withheld by his employer for taxes). This issue was not addressed in any abstracted testimony from the trial. Without any conflicting proof, it is impossible to say that the trial court erred in accepting that all amounts due to the appellant for the bonus as contemplated in the original decree had been paid.

■ The second prong of the appellant's second point on appeal involves the trial court's application of language in the property settlement regarding a "guarantee" of an annual income for appellant of $45,000 from a salary from the partnership and from alimony. However, the same paragraph with the "guarantee" language also includes the following: "In no event shall Husband's annual obligation for alimony exceed $31,000." The evidence at trial showed that the appellee had fully complied with his alimony obligation, but that the appellant had not received any salary from the partnership because Garland refused to admit her to the partnership. The appellant argues for a "fair and reasonable" interpretation of the contract "guarantee" and asked the court to order the appellee to make up the difference between the alimony paid and the $45,000 per year "guaranteed." While such a construction may have been equitable under the circumstances, it is not mandated under the property settlement, and is in fact contrary to the explicit maximum cap on the appellee's alimony; therefore, the trial court's refusal to award the requested relief is not erroneous.

Accordingly, we affirm on both points.

ROBBINS, C.J., BIRD, STROUD, and NEAL, JJ., agree.

GRIFFEN concurs in part, and dissents in part.

WENDELL L. GRIFFEN, Judge, concurring in part; dissenting in part. I concur with the majority regarding the chancellor's interpretation of the property settlement agreement. However, I respectfully dissent from the decision to affirm the valuation of the real estate partnership. The chancellor assessed the value of John Crismon's partnership interest in a real-estate partner-

ship at $365,000 and awarded Suzanne Crismon half of that amount, or $182,500. Appellant contends that the chancellor erred by assessing the "fair market" value of the partnership interest. The property settlement agreement incorporated into the parties' divorce decree provided that John Crismon would transfer to Suzanne Crismon his interest in the Crismon Garland real estate partnership, but that if Larry Garland (John Crismon's partner) refused to accept Suzanne Crismon as a partner either party (appellant or appellee) could petition the court to determine the value of the partnership and that John Crismon would pay Suzanne Crismon one half of the value of his interest in the partnership, plus one half of his Levi Straus pension. Because the property settlement agreement called for the court to determine the value of the partnership, I agree with appellant that it was error for the chancellor to use a "fair market value" assessment that included a "marketability discount" that decreased the valuation based on assumed costs of marketing the partnership despite undisputed proof that no sale of the partnership was contemplated.

Of course, the controlling legal authority is Arkansas Code Annotated section 9-12-315 (Repl. 1998) which provides that when a divorce decree is entered, all marital property shall be distributed one-half to each party unless the court finds such division to be inequitable. A chancellor's finding regarding the valuation of a business will not be overturned unless it is clearly erroneous. *Nicholson v. Nicholson*, 11 Ark. App. 299, 669 S.W.2d 514 (1984). The majority affirms by reasoning that Arkansas Code Annotated section 9-12-315 (Repl. 1998), obligated the chancellor to assess the partnership by using a "fair market value" approach as contrasted with a "fair value" determination. *Black's Law Dictionary*, 597 (6th ed. 1990) defines fair market value as "the amount of money which [a] purchaser who is willing but not obligated to buy would pay [an] owner who is willing but not obligated to sell, taking into consideration all uses to which the land is adapted and might in reason be applied." (citing *Arkansas State Highway Comm'n v. DeLaughter*, 250 Ark. 990, 1000, 468 S.W.2d 242, 247 (1971)). On the other hand, the concept of "fair value" in the context of a dissenting stockholder facing a merger of a corporation seems more applicable to the situation in this case. Under that standard, "fair value" is determined by ascertaining all assets and liabilities of the business and the intrinsic value of its stock rather than merely

appraising its market value. *See American Gen. Corp. v. Camp*, 190 A. 225 (Md. 1937).

I believe that the "fair value" approach is more equitable than a "fair market" approach to valuation of the real estate partnership in this instance because of the circumstances surrounding the property and the reasons for appraising its value. The partnership owns two parcels of real property with improvements consisting of a convenience store and Texaco service station located at the southwest corner of Dixon Road and Highway 65 in Little Rock, and an Exxon service station located at the southeast corner of Dixon Road and Highway 65. The businesses lease the improvements from the partnerships, and are now owned by Garland.

Appellee filed discovery responses which valued his half interest in the two Dixon Road properties at $600,000, less his share of debt valued at $138,000, for a net equity of $462,000. Discovery documents revealed that Larry Garland stated the value of the partnership holdings as $1,650,000 in a 1997 personal financial statement, with a net equity of $829,000 for a 50% partnership interest. In 1992, appellee prepared a personal financial statement which valued the properties at $1,250,000, with his 50% net equity valued at approximately $320,000. Another personal financial statement prepared by appellee valued the properties at $1,250,000 in 1993, with his 50% net equity valued at $355,000. After the divorce proceedings began, appellee submitted another personal financial statement to his bank and valued his 50% interest at $700,000, less debt equaling $18,000, for a net equity of $682,000.

Although there was no evidence that the property was to be sold or that a sale was contemplated, the chancellor relied upon expert testimony which set the value of the property based on the $350,000 "fair market value," ascribed by Larry Garland at the hearing and the application of a "marketability discount" factor advanced by appellee's expert witness. That valuation ignores, however, the obvious joint interest shared by Garland and appellee in setting the value low. Garland had already refused to accept appellant as a partner, thereby clearly signaling his preference to remain in the partnership with appellee. The property settlement agreement did not call for the partnership to be sold, but for its value to be determined by the chancellor and for appellee to pay appellant an amount equal to half his partnership interest. By "low balling"

the value of appellee's partnership interest through use of the "fair market value" method and marketability discount in the face of undisputed proof that there was no intention to sell the properties, Garland and appellee essentially collaborated to deny appellant the "fair value" of her half of appellee's interest. Had the partnership agreement called for appellee to sell his interest and then give appellant half the sale price, the "fair market value" approach and marketability discount would be appropriate.

I agree with appellant that whether the chancellor should have applied a marketability discount in valuing the appellee's 50% interest in the partnership based on the notion of assessing its value by using the fair market value approach is a question of law which the chancellor applied incorrectly. The property settlement agreement did not provide for the partnership to be sold in the event Garland refused to accept appellant as his partner. Therefore, I see no reason for using a valuation approach that assumes that the partnership would be sold. Thus, I would reverse and remand with instructions that the partnership's value be assessed without use of the marketability discount employed by the chancellor when she used the "fair market value" standard. As an alternative to affirming the result below, we should at least modify it by correcting the chancellor's error as we did in *Jones v. Jones*, 29 Ark. 133, 777 S.W.2d 873 (1989). There we held that the chancellor erred in reducing the valuation of a husband's accounting firm by 32% based on the alleged accounts the firm would lose upon the sale of his one-third interest due to divorce when there was no evidence that he was selling his interest or contemplating doing so. We should at least follow the same approach here and delete the reduction for the marketability discount where the effect is the same as we rejected in *Jones*, namely to reduce appellant's marital share. Following our approach in *Jones* would result in a property distribution that is consistent with the facts, one that is equitable, and one which lacks the unseemly appearance that appellant's rights under Ark. Code ann. § 9-12-315 are being denied so that appellee and his crony can profit.

Concurring in part; dissenting in part.